Donald Ray SIBLEY, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 09–95–428 CR.

Court of Appeals of Texas,
Beaumont.

Submitted Oct. 23, 1997.

Decided Nov. 26, 1997.

Christine Brown, Orange, for appellant.

John Kimbrough, County Attorney, Troy Johnson, Assistant County Attorney, Orange, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

A jury found Donald Ray Sibley, Jr. guilty of aggravated assault. Punishment was assessed by the jury as confinement in the Texas Department of Criminal Justice—Institutional Division for a term of 15 years and a fine of $10,000.

Sibley submits three points of error. First, he contends the evidence is insufficient to sustain the conviction. Second, he alleges he was entitled to a lesser included offense instruction in the jury charge. Lastly, he complains he was denied effective assistance of counsel. We overrule his points of error and affirm the judgment.

## LEGAL SUFFICIENCY

In his first point of error, Sibley contends the evidence was insufficient to establish that he intentionally and knowingly caused bodily injury to the victim. In reviewing the sufficiency of the evidence, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Rabbani v. State*, 847 S.W.2d 555, 558 (Tex.Crim.App. 1992). This standard of review remains the same for both direct and circumstantial evidence cases. *Geesa v. State*, 820 S.W.2d 154, 159–61 (Tex.Crim.App.1991). Circumstantial evidence is legally sufficient to support a criminal conviction. *See Eaglin v. State*, 872 S.W.2d 332, 337 (Tex.App.—Beaumont 1994, no pet.).

In January of 1995, a fight ensued at a party that was being held at a house in a residential area. Gunfire erupted between Sibley and another boy known as "Tiger." As a result the partygoers scattered down the road from the party house. Sibley ended up in front of Mr. Edward Michael's house, which was located several houses down from the party house. Tiger and some of the other partygoers ran to a "yellow house"

which is located at an angle across the street from the Michael home.

Three family members were home in the Michael house when the gun shots began, Mr. Michael, his wife Laura, and his daughter Kristy. All three family members testified as to the events witnessed by them. As revealed by the testimony of all three family members, Sibley was the gunman who fired shots toward the Michael home, injuring Mr. Michael.

Mrs. Michael was in her bedroom when she heard one loud shot. She then went to the front door and saw Sibley aim and shoot at the yellow house after which the boys at the yellow house scattered. She started yelling at Sibley, scolding him for shooting and threatening to call the police. Mr. Michael came to the door and pushed his wife aside, but she could still see out. Sibley turned, aimed the gun, and shot at the Michaels' door, hitting Mr. Michael in the leg. Mrs. Michael had a clear view in which to see Sibley as there was a streetlight in that area. Mrs. Michael also testified there was no one else around when Sibley fired the shots at their house.

Mr. Michael, who had been in a back room, testified that he also heard "[a] whole lot of shots all over the street, all over the place" and went to the front door. After pushing his wife out of the doorway, he was standing in the center of the storm door. Mr. Michael testified he saw a boy walking toward his house and shooting toward a yellow house. Mr. Michael testified that after firing the shots at the yellow house, the gunman fired in the direction of his house. A bullet went through the storm door and hit Mr. Michael in the left knee. Although he could not clearly see the gunman's face since he had recently undergone eye surgery, he did notice that the gunman was wearing a jacket that had bulls on it.

The Michaels' daughter, Kristy, also witnessed Sibley's actions. Kristy was immediately able to identify the person walking down the street as Sibley. She had known Sibley for three to four years, went to school with him, and she and Sibley were in the same physical education class at school.

Kristy recognized Sibley's jacket as one he was wearing in school earlier that day.

During his testimony, Sibley repeatedly denied firing shots toward the Michael's house. He testified that after gunfire came from the yellow house he fired back toward the yellow house two times. He stated he heard a bullet whiz by his ear and then heard glass shatter. He was standing in front of the Michaels' home at that time. He testified that after Tiger and the other boys ran away from the yellow house, Tiger shot at Sibley two more times. He admitted firing his gun but stated that all shots were fired at Tiger in a direction away from the Michael home.

Officers were given the name of Donald Sibley as a suspect's name by Kristy Michael. When found, Sibley was wearing a red, black, and white Chicago Bulls jacket. In his possession, Sibley had a black Lorcin .380 caliber automatic gun.

Sibley was taken to the Michael home for identification. Both Laura and Kristy Michael identified Sibley without hesitation.

Two spent shell casings were found out on the street in front of the Michael house. Both shell casings were seen in the same area and both were .380 shell casings.

There were two fired bullets of particular concern, one in Mr. Michael's leg, the other found in the wall of the Michaels' home. The bullet in Mr. Michael's leg was not removed as removal would have caused more trauma to the wound. A criminalist examined the casing found in the Michaels' yard. He determined that the casing was fired from Sibley's Lorcin .380 pistol. He also examined the fired bullet found in the Michaels' wall. This, he determined, was not fired from the .380 pistol, but instead, was a 9 millimeter Luger bullet. A diagnostic radiologist and deputy coroner, experienced in interpreting radiographs of gunshot wounds, examined the x-rays of Mr. Michael's leg and concluded the bullet in Mr. Michael's leg was consistent with either a 9 millimeter or .380 bullet. He could not say with certainty if the bullet was a .380 caliber. For such a determination, the bullet would have to be removed and examined.

Sibley argues that the evidence introduced through the State's witnesses did not establish guilt as to every element beyond a reasonable doubt. He specifically alludes to the fact that there was another gunman shooting during the event and argues the only way to prove, beyond a reasonable doubt, that Sibley fired the shot injuring Mr. Michael, is to remove and examine the bullet in Mr. Michael's leg.

■ As applied to this case, the standard of review is whether any rational person could have found beyond a reasonable doubt that Sibley was the gunman who fired the shot which injured Mr. Michael. *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573–74. It is clear that Sibley's testimony is in direct conflict with that of the Michael family. However, it is axiomatic that the witnesses' credibility and the weight to be given their testimony are within the jury's province. TEX.CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979). The jury may accept or reject all or any part of a witness's testimony. *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App.1981). As such, our legal sufficiency review is a very limited one. We do not serve as a "thirteenth juror in assessing the evidence." *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988). Instead, we act only "as a final, due process safeguard ensuring only the rationality of the factfinder." *Id.* The jury was free to reject Sibley's version and believe that of the Michaels. *See Calabria v. State,* 884 S.W.2d 568, 569 (Tex. App.—Beaumont 1994, no pet.), citing *Chambers v. State,* 805 S.W.2d 459 (Tex.Crim.App. 1991).

Viewing the evidence in the light most favorable to the jury's verdict, we believe a rational trier of fact could infer beyond a reasonable doubt that Sibley intentionally and knowingly fired the shot which caused bodily injury to the victim. Accordingly, point of error one is overruled.

## LESSER INCLUDED OFFENSE

■ In his second point of error, appellant argues the trial court erred in denying his request for a jury charge instruction on a lesser included offense of deadly conduct. Article 36.19 of the Texas Code of Criminal Procedure prescribes the manner for appellate review of jury charge error. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (op. on reh'g). Review of jury charge error requires two steps: (1) the appellate court must determine whether error actually exists in the charge; and (2) the appellate court must determine whether sufficient harm resulted from the error to require reversal. *Abdnor v. State,* 871 S.W.2d 726, 731–32 (Tex.Crim.App.1994); *Arline v. State,* 721 S.W.2d 348, 351 (Tex.Crim.App.1986).

■ To determine if a defendant is entitled to a charge on a lesser included offense, another two-step test is employed:

[F]irst, the lesser included offense must be included within the proof necessary to establish the offense charged, and, second, some evidence must exist in the record *that would permit a jury rationally to find* that if the defendant is guilty, he is guilty only of the lesser offense.

*Rousseau v. State,* 855 S.W.2d 666, 673 (Tex. Crim.App.1993), citing *Royster v. State,* 622 S.W.2d 442 (Tex.Crim.App.1981).

■ To arrive at our determination, we must consider all of the evidence introduced at trial, whether produced by the State or the defendant. *Penry v. State,* 903 S.W.2d 715, 755 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995), citing *Goodwin v. State,* 799 S.W.2d 719, 740 (Tex.Crim.App.1990). "The credibility of the evidence and whether it conflicts with other evidence or is controverted may not be considered in determining whether an instruction on a lesser-included offense should be given." *Penry,* 903 S.W.2d at 755; *Rousseau,* 855 S.W.2d at 672–73. Anything more than a scintilla of evidence from any source will be sufficient to entitle a defendant to submission of the issue. *Schweinle v. State,* 915 S.W.2d 17, 18 (Tex.Crim.App.1996) citing *Bignall v. State,* 887 S.W.2d 21 (Tex. Crim.App.1994).

■ The state concedes that deadly conduct is a lesser included offense of aggravated assault and we agree. *Bell v. State,* 693 S.W.2d 434, 437–39 (Tex.Crim.App.1985); *Bynum v. State,* 874 S.W.2d 903, 907 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

Thus, the only question remaining is whether the record before us contains evidence that Sibley is "guilty only" of deadly conduct.

In his brief, Sibley contends that an instruction on the lesser included offense of deadly conduct should have been given because (1) there was another gunman shooting that night, (2) there was a spent bullet found at the scene which was of a differing caliber type from his gun and bullet type, and (3) the bullet which struck Mr. Michael was not available for inspection. Based on this, he argues an instruction on the lesser included offense should have been included in the charge. The state argues Sibley is not entitled to the instruction because deadly conduct is not raised by the evidence. We agree with the State's assertions.

 A charge on a lesser included offense is not required if the evidence does not raise the issue. A jury charge on a lesser offense is not always warranted merely because a lesser offense is included within the proof of a greater offense. *Williams v. State*, 796 S.W.2d 793, 799 (Tex.App.—San Antonio 1990, no pet.). If the evidence raises only the issue that the accused is guilty of the offense charged or no offense at all, the issue of a lesser included offense is not raised. *Thomas v. State*, 578 S.W.2d 691, 698 (Tex.Crim.App.1979); *Simpkins v. State*, 590 S.W.2d 129, 134 (Tex.Crim.App.1979).

A person commits the offense of deadly conduct if he recklessly engages in conduct that places another in imminent danger of serious bodily injury. The definition of "recklessly" entails an actor being aware of, but consciously disregarding, a substantial and unjustifiable risk that a result will occur. TEX. PEN.CODE ANN. § 6.03(c) (Vernon 1994). The applicable statute on deadly conduct is as follows:

(a) A person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury.

(b) A person commits an offense if he knowingly discharges a firearm *at or in the direction of:*

(1) one or more individuals; or

(2) a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied.

(c) Recklessness and danger are presumed if the actor knowingly pointed a firearm *at or in the direction of* another whether or not the actor believed the firearm to be loaded.

TEX. PEN.CODE ANN. § 22.05 (Vernon 1994) (emphasis added).

Sibley repeatedly denied that he ever fired in the direction of the Michael house. He testified he never turned around to face the Michael house, but only fired shots in the direction of the yellow house. Sibley stated he was standing in front of the Michaels' home when he heard a bullet whiz by his ear subsequently shattering the glass in the Michaels' door.

The logic of Sibley's argument, that he is entitled to a charge on deadly conduct, is misplaced. His contention, that he was not the gunman firing the shot which hit Mr. Michael, as well as the evidence received at trial in support of this argument, does not indicate deadly conduct. Instead it directs us to the conclusion that no offense was committed toward the victim. Absent affirmative evidence raising the issue of deadly conduct, Sibley is not entitled to a jury instruction on this issue. *See, Bynum,* 874 S.W.2d at 907. The record does not contain evidence permitting a jury rationally to find that if the appellant was guilty, he was guilty only of deadly conduct. As Sibley was guilty either of the offense charged or no offense, a charge on the lesser included offense of deadly conduct was not deserved. Since the issue was not raised, the trial court did not err in refusing the requested instruction on deadly conduct. Point of error two is overruled.

### INEFFECTIVE ASSISTANCE OF COUNSEL

 In his third point of error, Sibley alleges his trial counsel was ineffective in that he failed to submit a written proposed jury charge on deadly conduct. Such failure, he argues, may have resulted in non-preservation of the issue for appellate review.

We examine ineffective assistance of counsel at the guilt/innocence stage of trial by the standard enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by Texas in *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex. Crim.App.1986). To prevail on an ineffective assistance of counsel claim, appellant must first establish that his counsel's representation fell below an objective standard of reasonableness. *Id.* at 55. Appellant must then show a reasonable probability exists that a different outcome would have resulted but for his trial counsel's professional errors. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex. Crim.App.1994); *Hernandez,* 726 S.W.2d at 55.

Prior to the reading of the charge to the jury, Sibley's trial counsel requested an instruction on the lesser included offense of deadly conduct. His counsel did not submit the proposed instruction in writing and did not dictate the instruction into the record. When the trial court asked for objections to the charge, counsel made the following request:

> [DEFENSE COUNSEL]: This is a requested charge by the defendant ... requesting a-an additional charge to the Court on a 22.05 deadly conduct lesser included charge. Arguably, we have what would constitute, if the reasonable doubt is overcome, deadly conduct only here; and that conduct would be such as to subject him to a lesser degree of punishment. I feel that we've had the testimony by the State's witnesses that would prove up such conduct. And it has been-
>
> THE COURT: Overruled.

We find that appellant's trial counsel sufficiently raised the issue before the court. The trial court's failure "to charge upon issues arising from the facts" may be preserved by an objection "distinctly specifying [the] ground," and "in no event shall it be necessary for the defendant or his counsel to present special requested charges to preserve or maintain any error assigned to the charge...." TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.1997); *see also, Reece v. State,* 878 S.W.2d 320, 323 (Tex. App.—Houston [1st Dist.] 1994, no pet.) (dic-

tated objection to jury charge sufficient to preserve alleged error for review without submission of a requested instruction). Accordingly, trial counsel did not perform deficiently, and, as our determination of Sibley's second point of error establishes, Sibley was not entitled to a lesser included instruction on deadly conduct. Thus, the result of the proceeding would not have differed. Sibley was not denied effective assistance of counsel. Point of error three is overruled.

We affirm the judgment and sentence below.

AFFIRMED.