TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00143-CR






William Williams a/k/a Clinton William Lee, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF RUNNELS COUNTY, 119TH JUDICIAL DISTRICT


NO. 4376, HONORABLE JOHN E. SUTTON, JUDGE PRESIDING







 A jury found appellant William Williams a/k/a Clinton William Lee guilty of
aggravated assault against a public servant. See Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2)
(West 1994). The jury assessed punishment at twenty-five years in prison. Appellant raises two
issues complaining that the evidence is factually insufficient to support his conviction and the trial
court erred by refusing to charge the jury on a lesser-included offense. Finding the evidence
sufficient and no error in the jury charge, we will affirm the conviction.


Background


 The basic facts in this case are undisputed. Ballinger Police Officer J.W. Sailer
testified that on February 22, 1996, about 1:15 a.m., he was wearing his police officer uniform
and driving a marked patrol car when he saw appellant lean out of the driver's side window of his
car holding a hand gun and fire four rounds of ammunition toward a bank. Sailer knew appellant
as the owner of a game room in town. Sailer quickly pulled in behind appellant and turned on his
spotlight and overhead lights. Appellant continued at the same rate of speed for about two blocks
and then rapidly accelerated and "took off." Sailer continued his pursuit and radioed for
assistance. During the chase, Sailer noticed something fly back and hit his patrol car. A few
minutes later Sailer realized that appellant's back window had shattered with pieces hitting Sailer's
patrol car. Appellant was driving with his left hand while turning around in his seat and shooting
his gun through the inside of his car at Sailer. Sailer continued to chase appellant while appellant
fired at least five rounds at him. Appellant stopped shooting at Sailer, turned off his headlights,
and increased his speed to about one hundred miles per hour. On two occasions during the chase,
appellant applied his brakes very hard in an effort Sailer believed to get him to rear-end appellant's
car. Sailer chased appellant out of town and eventually back into town covering approximately
seventeen miles. Officers eventually located appellant's car in Ballinger but could not find
appellant.

 Also undisputed in this case was that appellant had a diabetic condition. Dr. Kim
Peck, a physician practicing at the family health center in Ballinger, testified that she had seen
appellant four or five times to treat him for diabetes and related complications. Peck explained
that appellant is a brittle diabetic meaning that even with appropriate doses of insulin and
consistent physical activity, his blood sugar tends to fluctuate widely. During her course of
treatment, Peck found it necessary to change the type and dosage of insulin for appellant on
several occasions.

 Appellant testified at trial that he had no memory of the shooting and chase. He
recalled that he took his insulin around 10:00 p.m. but was feeling a little shaky. Because he
thought his blood sugar was low, appellant drove to a convenience store to get something to eat. 
The last thing appellant recalled was that he purchased two burritos, returned to his car, and
placed the burritos on the passenger seat beside him. The next thing he recalled was waking up
in a field outside of town with cactus in his left hand and his .45 caliber hand gun in his right
hand. Appellant was scared, and because he did not know what he had done, he began walking
along the road toward San Angelo. Someone eventually picked him up and drove him into town.
When he arrived in San Angelo, appellant called his pager service and learned from his mother
that the police in Ballinger were looking for him. Rather than returning to Ballinger, appellant
caught a ride to Houston. Once in Houston, appellant went to his former employer, Bob Gale,
a private investigator who operated a missing person bureau. Appellant stayed in Houston for two
weeks until he was arrested and transported to Ballinger.

 Appellant had always lived in Houston until he moved to Ballinger in 1994. His
last job was working for Gale. While working for Gale, appellant received several death threats
from an unknown person. Due to these threats, he decided to move to Ballinger where his mother,
brother, and grandmother lived. At the time he left Houston, he had served six years of a ten-year
probated sentence following his conviction for felony burglary of an automobile. Although
appellant told his Houston probation officer about the threats, he did not tell the probation officer
he was leaving town. Upon moving to Ballinger, appellant began using the name Clinton William
Lee rather than William Williams and did not attempt to transfer his probation to Runnels County.

 The State charged appellant with aggravated assault and contended at trial that he
intentionally engaged in the chase and shot at the bank and officer Sailer. Appellant contended
that he suffered a diabetic seizure caused by his insulin, acted involuntarily, and did not recall any
of the shooting or chase.

 The State called Dr. Milton Williams, an emergency room doctor in San Angelo. 
Williams had been practicing emergency room medicine for twenty-one years and routinely saw
approximately sixty patients per month with diabetic problems. Williams testified generally about
diabetes. He explained that brittle diabetics, despite training, have difficulty maintaining control
over their blood sugar. Williams testified that when diabetics have low blood sugar they become
confused or lethargic. This is corrected when they eat. When diabetics have low blood sugar
their failure to eat something may result in hypoglycemic coma. Some diabetics lash out when
their blood sugar is low. Typically motor skills become impaired. In Williams's opinion, during
a time when a diabetic is suffering a low blood sugar episode, such a person cannot make
conscious decisions, and while some of the time these people are able to carry on purposeful
movements, most are of the repetitive type. Such a person is generally unable to make choices
as simple as deciding to walk to the left or right. It was his opinion that during one of these
episodes a diabetic would not be able to perform a complicated task such as driving a car.

 Sheriff Baird testified that on two occasions during appellant's stay at the Runnels
County jail before trial appellant experienced seizure episodes. Both times the jailer thought
appellant's blood sugar was low and had appellant transferred to the emergency room. Appellant
was very uncooperative; it took two or three deputies to remove him from his cell, handcuff him
and transport him to the emergency room. Both times when he arrived at the emergency room his
blood sugar was low.

 Dr. Jarvis Wright, a forensic psychologist, examined appellant and reviewed the
related police reports. Wright concluded that appellant was aware of what he was doing at the
time of the incident and knew he was acting wrongfully. Wright based his conclusion on several
facts: (1) appellant speeded up after Sailer turned on his overhead lights; (2) he turned and fired
shots at the pursuing police officer; (3) he hit the brakes on more than one occasion during the
chase; (3) he turned off the main highway and drove down a narrow road; (4) he abandoned his
car; and (5) he fled on foot. Wright explained a person who does not realize that what he is doing
is wrong generally does not run away because he perceives no need to run. Further, such a person
does not maneuver a car with skill and agility through city streets to evade a pursuing police patrol
car flashing its overhead lights.

 Appellant's expert at trial, Dr. John Hickman, a certified forensic psychiatrist,
examined appellant before trial. He also described appellant as a brittle diabetic. It was
Hickman's opinion that appellant has a fairly new diagnosis called Paroxysmal Dyscontrol
Syndrome. Hickman described the diagnosis in layman terms as a diabetic having a seizure who
then "goes bananas." The syndrome tends to appear in people who are generally mild mannered,
fairly passive individuals, who suddenly become aggressive during one of these episodes. 
Hickman described a person with this diagnosis as becoming very aggressive and the episode
lasting anywhere from twenty minutes to several hours. Hickman explained that it is unknown
what triggers an episode. Hickman explained that while an episode is occurring the person may
still perform routine daily activities or even very complicated activities. One cannot predict when
these episodes will occur. Hickman compared the episodes to epileptic seizures; during the
episode the person has amnesia and cannot later remember what occurred. Because Hickman
suspected appellant had one of these episodes the night of the shooting and chase, he seriously
doubted that appellant would be able to recall what occurred.


Discussion


 Appellant raises two issues on appeal. First, appellant raises a factual insufficiency
claim. He contends that, because there was uncontroverted expert testimony that he suffered from
a rare mental disorder, the jury's implied finding that he was not suffering involuntary intoxication
from his insulin at the time of the incident was so contrary to the overwhelming weight of the
evidence as to render the verdict clearly wrong and unjust. Second, appellant contends that the
trial court erred in refusing to submit an instruction to the jury on the issue of the lesser included
offense of deadly conduct.


Factual Insufficiency

 In point of error one, appellant contends that the overwhelming weight of the
evidence did not support the jury's rejection of his involuntary intoxication defense. Appellant
argued to the trial court that his insulin rendered him involuntarily intoxicated. This defense
requires proof that (1) the accused has exercised no independent judgment or volition in taking an
intoxicant; and (2) as a result of the intoxication the accused did not know that his conduct was
wrong or was incapable of conforming his conduct to the requirements of the law he allegedly
violated. Torres v. State, 585 S.W.2d 746, 749 (Tex. Crim. App. 1979). One of the limited
instances when an involuntary intoxication instruction may be given is when the defendant has
taken prescribed drugs according to the prescription. See Shurbet v. State, 652 S.W.2d 425, 428
(Tex. App.--Austin 1982, no pet.). The trial court submitted an instruction to the jury on the
affirmative defense of involuntary intoxication.

 While it was undisputed that appellant had a diabetic condition, it was disputed
whether, at the time of the shooting and chase, appellant suffered a diabetic seizure caused by his
medication. Appellant contends he did and that the evidence supporting the affirmative defense
so far outweighed the contrary evidence that the jury's rejection of the defense was clearly wrong
and unjust.

 An appellate court will set aside a verdict for factual insufficiency only if the verdict
is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly
unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone v. State, 823
S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd untimely filed). In a factual sufficiency
review, we do not view the evidence in the light most favorable to the verdict. Instead, we
consider all of the evidence equally, including the testimony of defense witnesses and the existence
of alternative hypotheses. Orona v. State, 836 S.W.2d 319, 321 (Tex. App.--Austin 1992, no
pet.). The jury as the trier of fact is the exclusive judge of the credibility of witnesses and the
weight to be given their testimony. Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App.
1992). The jury is free to accept or reject all or any part of any witness's testimony. Id. The jury
may draw reasonable inferences and make reasonable deductions from the evidence. Benavides
v. State, 763 S.W.2d 587, 588-89 (Tex. App.--Corpus Christi 1988, pet. ref'd).

 Appellant argues that, given Dr. Hickman's credentials, the jury should have given
greater weight to his testimony that because of appellant's rare disorder he could have performed
all the acts recounted but not remember any of what occurred. Once again, the jury was the sole
judge of Hickman's credibility and the weight to be given his testimony. Adelman, 828 S.W.2d
at 421. The jury could have accepted or rejected any or all of Hickman's testimony. Id. The
State's expert, Dr. Williams, testified that a diabetic seizure by a brittle diabetic would cause a
person to become lethargic and lose the ability to function with normal motor skills. Williams
concluded that if a person were having a diabetic seizure, that person would be unable to drive a
car.

 By finding appellant guilty, the jury simply rejected appellant's version of the
incident. Just because a defendant presents a different version of the events does not render the
evidence insufficient. See Eaglin v. State, 872 S.W.2d 332, 337 (Tex. App.--Beaumont 1994,
no pet.). We conclude that the evidence is factually sufficient to support the jury's verdict as well
as its failure to find in favor of appellant's defense. The verdict was not so contrary to the
overwhelming weight of the evidence as to render the verdict wrong or unjust. The first issue is
overruled.

Lesser-Included Offense of Deadly Conduct

 In his second issue, appellant contends that the trial court reversibly erred by failing
to instruct the jury on the lesser-included offense of deadly conduct. See Tex. Penal Code Ann.
§ 22.05 (West 1994).

 Appellant was charged with aggravated assault against a public servant. A person
commits such an offense who intentionally or knowingly threatens another with imminent bodily
injury, exhibits a deadly weapon during the commission of the assault, and knows that the person
is a public servant lawfully discharging his duties. Tex. Penal Code Ann. §§ 22.01(a)(2),
22.02(a)(2) (West 1994). A person commits the offense of deadly conduct who recklessly engages
in conduct that places another in imminent danger of serious bodily injury or who knowingly
discharges a firearm at or in the direction of one or more individuals. Tex. Penal Code Ann.
§ 22.05(a) (West 1994). A person acts recklessly, or is reckless, with respect to circumstances
surrounding his conduct or the result of his conduct when he is aware of but consciously
disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. 
Tex. Penal Code Ann. § 6.03(c) (Tex. 1994).

 An offense can be a lesser-included offense of another if, among other things, the
lesser offense differs from the greater offense charged only in that a less culpable mental state
suffices to establish its commission. Tex. Code Crim. Proc. Ann. art. 37.09 (West 1981). A
defendant is entitled to a charge on a lesser included offense if: (1) the lesser-included offense is
within the proof necessary to establish the offense charged; and (2) some evidence exists in the
record that would permit a jury rationally to find that if the defendant is guilty, the defendant is
guilty only of the lesser-included offense. Rousseau v. State, 855 S.W.2d 666, 672 (Tex. Crim.
App. 1993).

 In applying the Rousseau test in this case, the first prong is met because the deadly
conduct offense is within the proof necessary to establish aggravated assault. The only difference
between aggravated assault and deadly conduct is that deadly conduct requires proof of
recklessness, a less culpable mental state than acting intentionally. See Bell v. State, 693 S.W.2d
434, 443 (Tex. Crim. App. 1985); Sibley v. State, 956 S.W.2d 832, 836 (Tex. App.--Beaumont
1997, no pet.). The second prong of the Rousseau test requires that the record must reflect that
the lesser-included offense was raised by the evidence. See Bell, 693 S.W.2d at 443; Sibley, 956
S.W.2d at 836. Therefore, in this case, there must have been evidence directly germane to deadly
conduct before the trial court was required to instruct the jury on the lesser-included offense. 
Skinner v. State, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997) (citing Bignall v. State, 887
S.W.2d 21, 24 (Tex. Crim. App. 1994)). It is not enough that the jury may simply disbelieve
crucial evidence pertaining to the greater offense.

 We conclude that appellant has not shown that he was entitled to an instruction on
the lesser-included offense of deadly conduct. Under the second prong of the Rousseau test,
before a rational jury could find appellant guilty of only deadly conduct, the record had to contain
some evidence that appellant only recklessly placed Sailer in danger of serious bodily injury or
knowingly discharged a firearm in the direction of Sailer. The thrust of the State's case at trial
was that appellant intentionally and knowingly threatened to cause imminent bodily injury to Sailer
with a firearm knowing that Sailer was a police officer. The thrust of appellant's case at trial was
that he acted involuntarily during the entire episode without any mental state. We hold that the
record lacks evidence showing that appellant acted only recklessly in shooting at Sailer. 
Consequently, the trial court did not err by failing to give a jury instruction regarding the lesser-included offense of deadly conduct. The second issue is overruled.


Conclusion


 The conviction is affirmed.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Powers*

Affirmed

Filed: April 22, 1999

Do Not Publish











* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).



e risk that the circumstances exist or the result will occur. 
Tex. Penal Code Ann. § 6.03(c) (Tex. 1994).

 An offense can be a lesser-included offense of another if, among other things, the
lesser offense differs from the greater offense charged only in that a less culpable mental state
suffices to establish its commission. Tex. Code Crim. Proc. Ann. art. 37.09 (West 1981). A
defendant is entitled to a charge on a lesser included offense if: (1) the lesser-included offense is
within the proof necessary to establish the offense charged; and (2) some evidence exists in the
record that would permit a jury rationally to find that if the defendant is guilty, the defendant is
guilty only of the lesser-included offense. Rousseau v. State, 855 S.W.2d 666, 672 (Tex. Crim.
App. 1993).

 In applying the Rousseau test in this case, the first prong is met because the deadly
conduct offense is within the proof necessary to establish aggravated assault. The only difference
between aggravated assault and deadly conduct is that deadly conduct requires proof of
recklessness, a less culpable mental state than acting intentionally. See Bell v. State, 693 S.W.2d
434, 443 (Tex. Crim. App. 1985); Sibley v. State, 956 S.W.2d 832, 836 (Tex. App.--Beaumont
1997, no pet.). The second prong of the Rousseau test requires that the record must reflect that
the lesser-included offense was raised by the evidence. See Bell, 693 S.W.2d at 443; Sibley, 956
S.W.2d at 836. Therefore, in this case, there must have been evidence directly germane to deadly
conduct before the trial court was required to instruct the jury on the lesser-included offense. 
Skinner v. State, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997) (citing Bignall v. State, 887
S.W.2d 21, 24 (Tex. Crim. App. 1994)). It is not enough that the jury may simply disbelieve
crucial evidence pertaining to the greater offense.

 We conclude that appellant has not shown that he was entitled to an instruction on
the lesser-included offense of deadly conduct. Un