Reversed and Remanded and Memorandum Opinion filed September 23, 2003















Reversed and Remanded and Memorandum Opinion filed September 23,
 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00839-CR

____________

 

CHRISTOPHER ONEAL JOHNSON, Appellant

 

V.

 

THE STATE OF TEXAS , Appellee

 



 

On Appeal from the 339th District Court

Harris County, Texas

Trial Court Cause No. 889,170

 



 

M
E M O R A N D U M  O P I N I O N

Appellant
Christopher Oneal Johnson was convicted by a jury of
aggravated assault on a public servant. 
Asserting two points of error, appellant appeals his conviction.  We reverse and remand for a new trial.

FACTUAL
AND PROCEDURAL HISTORY








On
September
 26, 2001,
Debbie Lynn Sadiq arrived home to find her fiancé,
Prentice Coleman, lying on the floor in a pool of blood.  Although it was ultimately determined Coleman
had suffered a seizure, initially the cause of Coleman=s
injury was unknown.  Sadiq
called 9-1-1
and a Houston Fire Department fire truck and ambulance were dispatched to the
scene.  Sadiq
also called her son, the appellant, to drive her to the hospital.

Complainant
Arnoldo Jimenez was the ambulance driver of the
vehicle dispatched to care for Coleman; Rudolph Valdez, a member of the Houston
Fire Department, and his partner, Ruben Hernandez, a paramedic, were also
dispatched to the scene.  When Valdez and Hernandez arrived, complainant
was treating Coleman in the back of the ambulance.

At
trial, Valdez and Hernandez testified they joined
complainant (Jimenez) in the ambulance shortly after their arrival at the scene.  While the three were working on Coleman,
appellant arrived with a female companion. 
It is at this point that the State=s and appellant=s
versions of the facts differ significantly. 


According
to the State, the ambulance door was closed when appellant arrived.  Appellant slammed on his brakes, screeched to
a halt, exited his vehicle holding a .380 automatic pistol, pointed the gun at Valdez, and told Valdez to get out of the way.  Appellant then opened the door to the
ambulance, pointed his pistol at the paramedics and asked Awhich
one of you mother f‑‑‑ers is first?@
or Awhich
one of you mother f---ers did it?@  When Valdez told appellant to put the gun away,
appellant allegedly answered Af--- you@
and continued pointing the gun for 30 to 45 seconds.  Complainant testified he was Aterrified@
and believed appellant was going to shoot them. 
There is conflicting testimony as to the color and caliber of the
weapon.

According
to the State, a neighbor, Juan Collier, then distracted appellant and appellant
and Collier began to fight.  During the
altercation, the paramedics watched from inside the ambulance and called
police.  After a few moments, appellant
put away his gun and left the scene.  No
gun was ever admitted as evidence during the trial.








The
defense=s
version of the facts is quite different. 
Appellant=s brother, a witness to the
incident, testified that when appellant arrived at Sadiq=s
home, there was a large crowd of bystanders. 
The crowd of bystanders included Collier, a man with whom appellant had
many disagreements, as well as several of Collier=s friends.  

According
to the defense, when appellant got the call from his mother, he was not
informed as to the cause of Coleman=s injury and assumed it was a robbery
or attack of some kind.  Upset and
distraught over Coleman=s condition, appellant rushed to the
scene.  As he screeched to a halt in
front of Sadiq=s home, he threw open the door to
exit his vehicle and a BB gun and mobile phone fell out of the car.  Picking up the BB gun, appellant confronted
Collier=s
group and asked Awhich of you . . . did it@
referencing Coleman=s injury.  The defense contends the door to the
ambulance was open and appellant could see the blood streaming down Coleman=s
face.

Because there is a long history of
animosity between appellant and Collier, the defense claims, appellant and
Collier Apass[ed]
words@
and came Atowards one another.@
According to the testimony of defense eyewitnesses, Collier taunted appellant
with the words, AOh, ‑‑‑‑,
you got a gun.  Shoot me.  Shoot me.@ 
Collier then taunted appellant with AYeah, I did it.  And your mother is next.@  

Although
appellant admits both he and Collier swung at each other, he denies actually
getting into a fight with Collier or threatening Fire Department
personnel.  He testified he knew the
people inside the ambulance were Aambulance people@
trying to help Coleman.  He acknowledged
asking A[w]hich one of you . . . did this,@
but claims his question was not directed Atowards the firefighters.@  Along with his mother and brother, he
testified he only carried a BB gun the day of the incident.








Appellant
was indicted for the offense of aggravated assault on a public servant.  The indictment further alleged appellant had
a prior felony conviction.  A jury found
appellant guilty as charged after defense counsel requested instructions on two
lesser included offenses  which were
denied by the trial court.  The jury
assessed punishment at confinement in the Texas Department of Criminal Justice
Institutional Division for fifteen years. 
Appellant gave timely notice of appeal.

DISCUSSION

Asserting
two points of error, appellant contends the trial court erred by failing to
instruct the jury on the lesser included offenses of assault and deadly
conduct.  See Tex. Pen. Code Ann. ''
22.01(a)(2) and 22.05(a), (c) (Vernon 2003).[1]  Because the trial court failed to instruct
the jury on the requested instructions, he claims, reversal is required.  Ross v. State, 861 S.W.2d 870, 875 (Tex. Crim.
App. 1992) (en banc).  We agree.

1.       Standard of Review and Waiver

The
trial judge has the legal duty and responsibility to prepare for the jury a
proper  charge distinctly setting forth
the law applicable to the case.  Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2003).  We review the alleged charge error by
answering two questions:  (1) whether
error actually existed in the charge; and (2) whether sufficient harm resulted
from the error to result in reversal. See Posey v. State, 966 S.W.2d 57,
60 (Tex. Crim. App.
1998).                                                               








Article
37.08 codifies the common-law lesser included offense and provides that in a
prosecution for an offense with lesser included offenses, the jury may find the
defendant not guilty of the greater offense, but guilty of any lesser included
offense.  Tex. Code Crim. Proc. Ann. art. 37.08 (Vernon 1981).  Article 37.09 provides the test for
determining whether an offense is a lesser included offense pursuant to article
37.08.  Id. at art. 37.09. The Texas Court of Criminal appeals has
articulated the test as follows:

[F]irst, the lesser included
offense must be included within the proof necessary to establish the offense
charged, and

second, some evidence must exist
in the record that if the defendant is guilty, he is guilty only of the lesser
offense.

 

Rousseau
v. State, 855 S.W.2d
666, 672 (Tex. Crim. App. 1993) (emphasis added). 

Appellant
has properly preserved error under article 36.15 of the Code of Criminal
Procedure.  To preserve error under
article 36.15, appellant Amay, by a special requested
instruction, call the trial court=s attention to error in the charge,
as well as omissions therefrom, and no other
exception or objection to the court=s charge shall be necessary to
preserve any error reflected by any special requested instruction which the
trial court refuses.@ 
Tex. Code Crim. Proc. Ann.
art. 36.15 (Vernon Supp. 2003).  Thus, a defendant preserves error under
article 36.15 if the request is specific enough to put the trial court on
notice of an omission or error in the charge. 
Chapman v. State, 921 S.W.2d 694, 695 (Tex. Crim.
App. 1996) (en banc);   Vasquez v.
State, 919 S.W.2d 433, 435 (Tex. Crim. App. 1996)
(en banc); Ford v. State, 38 S.W.3d 836, 841 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d);
Brazelton v. State, 947 S.W.2d 644, 647
(Tex. App.CFort
Worth 1997, no writ).  Indeed, appellant has also preserved error
under the more lenient standards of article 36.14.  Under that article, all that is necessary to
preserve error is an objection to the charge and an adverse ruling by the
court.  Arana
v. State, 1 S.W.3d 824, 826 (Tex. App.CHouston
[14th Dist.] 1999, pet. ref=d). 









The purpose of articles 36.14 and 36.15 is to place the trial
judge on notice of what aspects of the charge the defendant regards as
defective and to afford the judge an opportunity to correct the charge before
reading it to the jury.  Brown v.
State, 716 S.W.2d 939, 943
(Tex. Crim. App. 1986) (en banc). Therefore, neither article 36.14 nor 36.15
require the requested charge to be in perfect form; it must only be sufficient
to call the error to the trial court=s attention.  Ford, 38 S.W.3d  at 841. 


Defense
counsel requested, in open court, the lesser included charges of deadly conduct
and assault before the trial judge read the charge to the jury.  The judge promptly denied the request.  Defense counsel stated:

Judge, we are going to request a lesser included charge
on B
first of all.  Deadly conduct.  We believe that was raised, deadly conduct,
section 22.03 of the Penal Code.  I
believe that issue was raised by the evidence in the case.  And we also include a request of a lesser
included charge of simple assault, 22.01, assault by threat.  Because we don=t believe there was evidence produced to show that if the
jury does believe that a B B gun was involved that it
was a firearm.  No evidence whatsoever
[was] produced on that.  So we would ask
for a lesser included charge on that also.  


This request was sufficient to preserve error under articles 36.15 and
36.14 because it was sufficiently specific to call the trial court=s attention to the omission in the
charge.  See Ford, 38 S.W.3d  at 841. 
If the trial court refuses to include the requested charge, the failure
to do so preserves the issue for appeal. 
Id.

Moreover, a trial court has the duty and responsibility to
instruct on the Alaw applicable to the case.@ Ford, 38 S.W.3d at 840.  In discharging this duty, the trial court is
authorized to sua sponte
include a charge on a lesser offense. 
Id. 
Indeed, a Atrial court is not restricted to
submitting lesser included offenses only when the defendant has properly
requested them.@ Id.

Because we find appellant=s request sufficiently informed the
trial court regarding  the omission in
its proposed charge, and because the trial court was authorized to include such
a charge even if not properly requested, we find appellant did not waive review
of the trial court=s omission.  Therefore,
we address the two prongs of Rousseau. 

 








2.       The first prong of Rousseau

The
State concedes the first prong of the test, that assault and deadly conduct are
lesser included offenses of aggravated assault on a public servant.[2]  See, e.g., Bell v. State, 693 S.W.2d 434,
437B39
(Tex. Crim. App.
1985) (reckless conduct is a lesser included offense of assault by threat with
a deadly weapon); Sibley v. State, 956 S.W.2d 832, 835 (Tex. App.CBeaumont 1997, no pet.) (deadly conduct is a
lesser included offense of aggravated assault); Johnson v. State, 828
S.W.2d 511, 516 (Tex.
App.CWaco 1992, pet. ref=d) (reckless conduct may be a lesser
included offense to aggravated assault); McElhaney
v. State, 899 S.W.2d 15, 17 (Tex. App.CTyler
1995, pet. ref=d) (assault is a lesser included
offense of aggravated assault); Ford, 38 S.W.3d at 845 (deadly conduct
is a lesser included offense of aggravated assault).

The
issue, therefore, is whether some evidence exists that would permit a
jury to rationally find that if appellant was guilty, he was guilty only of one
of the lesser offenses.

3.       The second prong of Rousseau








When
addressing the second prong of the Rousseau test, we focus on whether any
evidence exists in the record that would permit a rational jury to find
appellant guilty only of assault or deadly conduct.  See Bignall v.
State, 887 S.W.2d 21, 23 (Tex. Crim. App.
1994).  Anything more than a scintilla of
evidence is sufficient to entitle appellant to a lesser charge.  Id. 
All trial evidence should be considered to determine if there is more
than a scintilla of evidence to support the requested charge.  Id.  The defense is
entitled to the charge regardless of which party offered the evidence, and
regardless of whether the evidence was weak, impeached, or contradicted.  Bell, 693 S.W.2d at 442.  

Proof
of a culpable mental state generally relies upon circumstantial evidence.  Dillon v. State, 574 S.W.2d 92,
94 (Tex. Crim. App. 1978).  Ordinarily, it must be inferred from the
acts, words, and conduct of the accused and the surrounding circumstances.  Fuentes v. State,  880 S.W.2d 857, 860 (Tex. App.CAmarillo
1994, pet. ref=d). 
Thus, the issue of whether appellant was recklessCthat
is, whether he was aware of, but consciously disregarded a substantial and
unjustifiable risk that injury could occur[3]Cis
a conclusion that must be drawn through inference from all the circumstances by
the trier of fact. 
See Dillon, 574 S.W.2d at 94B95. 
Recklessness is presumed if the actor knowingly pointed a firearm at or
in the direction of another, whether or not the actor believed the firearm to
be loaded.  Tex. Pen. Code Ann. ' 22.05(c) (Vernon 2003).

 Whether evidence justifies a lesser included
offense charge is a function of (1) whether anything more than a scintilla of
evidence either affirmatively refutes or negates an element of the greater
offense, or (2) whether evidence on the issue is subject to two different
interpretations, one of which negates or rebuts an element of the greater
offense.  Arevalo
v. State, 943 S.W.2d, 887, 889 n.5 (Tex. Crim. App. 1997).  








At
trial, seven witnesses testified regarding appellant=s
weapon.  Of the four who testified the
weapon looked real, oneCan ex-Marine familiar with gunsCtestified
the weapon was a bronze, dark brown, or black firearm; one testified it was a Ahandgun@;
one testified it was a silver firearm; and one testified it looked Alike
a .380 automatic,@ but that he really did not know
what kind of gun it was.  Four witnesses
testified Collier never displayed fear at seeing the weapon, and three
testified the weapon was only a BB gun. 
From this testimony, we conclude there is more than a scintilla of
evidence that the weapon brandished by appellant was not a deadly
weapon, an element of the charged offense.[4]

Several
witnesses also testified regarding whether appellant Athreatened@
the firefighters. Two testified appellant pointed the firearm directly at Valdez, Hernandez, and the complainant;
four testified he never pointed his weapon at the firefighters and never
verbally threatened the firefighters in any way; and three testified he Awaved@
the weapon back and forth carelessly.  From this testimony, we conclude there is more
than a scintilla of evidence that appellant either did not threaten
complainant at all, or that he, at most, was merely reckless. 

Finally,
several witnesses testified regarding whether appellant Athreatened@
the firefighters with his comment, Awhich of you . . . did this?@  Appellant, his brother, and Collier all
testified appellant directed the comment to Collier and his friends;
complainant and the firefighters all testified he directed the comment to them.  Even the firefighters acknowledged, however,
that it was not unusual for persons in extremely stressful situations, such as
appellant, to be upset, uncontrolled, concerned, and highly agitated.  Several witnessesCeven
the State=sCtestified appellant appeared to be
under the misperception that someone had deliberately injured Coleman and that
he Awas
looking for that person.@ 
From this evidence, we conclude there is more than a scintilla of
evidence from which a rational jury could conclude appellant lacked the
culpable mental state to threaten complainant.








Because
we conclude there is more than a scintilla of evidence from which a rational
jury could conclude the weapon in question was a BB gun rather than an
automatic pistol;  appellant Awaved@
the gun recklessly, rather than pointed it threateningly; and appellant lacked
the culpable mental state to threaten complainant, we find the evidence
justifies inclusion of appellant=s two requested lesser included
offenses.  See Bignall,
887 S.W.2d at 23.  Indeed, the jury could
have found either that  (1) appellant
threatened complainant with a firearm (aggravated assault); (2) appellant
threatened complainant with a BB gun (assault); (3) appellant did not threaten
complainant, but was reckless, with a firearm (deadly conduct);  (4) appellant did not threaten complainant,
but was reckless, with a BB gun (no crime); or (5) appellant did not threaten complainant, nor was he
reckless, with a firearm or BB gun (not guilty).

Therefore,
the trial court erred when it failed to instruct the jury on these offenses.

HARM
ANALYSIS

A
judgment will not be reversed based on a charge error unless the error was Acalculated
to injure the rights of [the] defendant, or unless it appears from the record
that the defendant has not had a fair and impartial trial.@  Tex.
Code Crim. Proc. art 36.19 (Vernon 1981).  When an appellate court finds charge error,
it must determine whether the error caused sufficient harm to require
reversal.  Benge
v. State, 94 S.W.3d 31, 37 (Tex. App.CHouston [14th Dist.]
2002, pet. ref=d) (citing Hutch v. State,
922 S.W.2d 166, 170B71 (Tex. Crim. App. 1996)).  

The
degree of harm necessary for reversal depends upon whether the error was
preserved.  Benge,
94 S.W.3d at 37; see also Almanza v. State,
686 S.W.2d 157, 171 (Tex.
Crim. App.
1985) (op. on reh=g). 
Error properly preserved will require reversal as long as the error is
not harmless.  Benge,
94 S.W.3d at 37.  This means Aany harm, regardless of degree, is
sufficient to require reversal.@ 
Id.; see also Almanza,
686 S.W.2d at 171.

In
conducting the harm analysis, a reviewing court may consider the following
factors:  (1) the charge itself; (2) the
state of the evidence, including contested issues and the weight of the probative
evidence; (3) arguments of counsel; and (4) any other relevant information
revealed by the record of the trial as a whole. 
Benge, 94 S.W.3d at 37.  








Because
appellant preserved error in this case, we determine whether the error caused any
harm, regardless of degree.  Id. 
Harm exists when the penalty imposed for the charged offense exceeds the
potential penalty for the lesser included offense. See Bignall
v. State, 899 S.W.2d 282, 284 (Tex. App.CHouston [14th Dist.]
1995, no pet.).  Harm also generally
exists whenever the failure to submit a lesser included offense leaves the jury
with the sole option of either convicting defendant of the greater offense or
acquitting him.  Saunders v. State,
913 S.W.2d 564, 571 (Tex.
Crim. App.
1995).         

Here,
appellant claims he was harmed because he received a sentence in excess of that
which would have been imposed for the lesser included offenses.  Additionally, he argues the
jury was unlikely to acquit him after learning of his prior felony conviction
and learning how he frightened the paramedics, even if it believed his
testimony regarding the BB gun and his state of mind; thus, the jury had no
alternative but to find him guilty of aggravated assault.  We agree.








If
appellant had been convicted of deadly conduct, his maximum punishment would
have been confinement in a county jail for one year and a $4,000 fine.[5]  If he had been convicted of assault, his
maximum punishment would have been a $500 fine.[6]  Because the penalty for aggravated assault on
a public servant exceeds both the penalty for deadly conduct and the penalty
for assault, appellant indeed suffered harm.[7]  See Benge,
94 S.W.3d at 37 (appellant suffered sufficient harm for reversal when appellant
was sentenced to one year=s confinement for deadly conduct,
but the maximum penalty for reckless driving would have only been confinement
for 30 days and a $200 fine).

Appellant
was also harmed because the jury was not permitted to fulfill its role as
fact-finder to resolve the factual disputes regarding appellant=s
weapon and intent.  Rather, it was left
with the sole option of either convicting appellant of aggravated assault or
acquitting him.  See, e.g., Beck v.
Alabama, 447 U.S. 625, 634, 100 S. Ct. 2382, 2388 (1980) (noting that a
jury, believing defendant to have committed some crime, but given only the
option to convict him of a greater offense, may choose to find a defendant
guilty of the greater offense, rather than to acquit him altogether, even
though the jury may have a reasonable doubt defendant really committed the
greater offense); Saunders, 913 S.W.3d at 572 (noting that A[i]t
is at least arguable that a jury that believed the defendant committed an uncharged
lesser included offense, but unwilling to acquit him of all wrongdoing, and
therefore inclined to compromise, would opt for a lesser included offense that was
submitted rather than convict him of the greater offense.@).


The
Almanza court explained the statutory harmless
error analysis for charge error: 

Article 36.19 actually separately contains the standards
for both fundamental error and ordinary reversible error.  If the error in the charge was the subject of
a timely objection in the trial court, then reversal is required if the error
is Acalculated
to injure the rights of defendant,@ which means no more than that there must be some
harm to the accused from the error.  In
other words, an error which has been properly preserved by objection will call
for reversal as long as the error is not harmless.

Almanza,
686 S.W.2d at 171.  The actual degree of
harm must be assayed in light of the entire jury charge, the state of the
evidence, including the contested issues and weight of probative evidence, the
argument of counsel and any other relevant information revealed by the record
of the trial as a whole.  Ovalle v. State, 13 S.W.3d 774, 786 (Tex. Crim.
App. 2000).  








Because
the jury=s
verdict was directly and adversely influenced by the lack of options it was
given in the jury charge, we cannot say with confidence that the error in the
charge did not cause some harm to appellant. 
Accordingly, the statutory standard for reviewing error in the charge
requires us to set aside the verdict and remand the case for a new trial.  See id. at 788.

We
sustain both of appellant=s points of error.  The judgment of guilt is reversed and the
case is remanded to the district court for a new trial.

/s/        John S. Anderson

Justice

 

Judgment rendered Memorandum
Opinions filed September 23, 2003. (Guzman, J., concurs in the result
only).

Panel consist of Justices Anderson,
Seymore and Guzman. 

Do Not Publish — Tex. R. App. P. 47.2(b)











[1]  A person
commits assault if he (1) intentionally, knowingly, or recklessly causes bodily
injury to another, including the person=s
spouse;             (2) intentionally or
knowingly threatens another with imminent bodily injury, including the person=s spouse; or (3) intentionally or knowingly causes
physical contact with another when the person knows or should reasonably believe
that the other will regard the contact as offensive or provocative.  Tex.
Pen. Code Ann. ' 22.01(a) (Vernon 2003).  A person commits deadly conduct if he Arecklessly engages in conduct that places another in
imminent danger of serious bodily injury.@  Id. at ' 22.05(a). 
Recklessness and danger are presumed if the actor Aknowingly pointed a firearm at or in the direction of
another whether or not the actor believed the firearm to be loaded.@  Id. at ' 22.05(c).





[2]  An offense is a
lesser included offense if: (1) it is established by proof of the same or less
than all the facts required to establish commission of the offense charged; (2)
it differs from the offense charged only in the respect that a less serious
injury or risk of injury exists; (3) it differs from the offense charged only
in the respect that a less culpable mental state is required; or (4) it
consists of an attempt to commit the offense charged or an otherwise included
offense.  Tex. Code Crim. Proc. art. 37.09 (Vernon 1981).  

AAggravated assault on a public servant@ requires the State to prove appellant (1)
intentionally or knowingly threatened another (2) with imminent bodily injury
(3) by using or exhibiting a firearm, and (4) the complainant is a public
servant; Aassault@
requires the State to prove appellant (1) intentionally or knowingly threatened
another (2) with imminent bodily injury; and Adeadly
conduct@ requires the State to prove appellant (1) recklessly
engaged in conduct that placed another in (2) imminent danger of serious bodily
injury.  Tex. Pen. Code Ann. ''
22.02, 22.01, and 22.05 (Vernon 2003).





[3]  See Tex. Pen. Code Ann. ' 6.03(c)(Vernon 2003); Ford, 38 S.W.3d at 845
n.6.





[4]  Subsection
22.02 of the Texas Penal Code, defining Aaggravated
assault,@ uses the term Adeadly
weapon.@  Tex. Pen. Code Ann. ' 22.02 (Vernon 2003). 
A Adeadly weapon@ is
defined as a firearm or anything manifestly designed to inflict death or
serious injury.  Id. at ' 1.07(a)(17)(A). 
A Afirearm@ is
defined as Aany device designed, made, or adapted to expel a
projectile through a barrel by using the energy generated by an explosion or
burning substance or any device readily convertible to that use.@  Id. at ' 46.01(3).  A BB
gun does not fit the definition of a deadly weapon.





[5]  Deadly conduct
is punishable as a class A misdemeanor.  Tex. Pen. Code Ann. ' 22.05(e) (Vernon 2003).  The penalty for a class A misdemeanor is (1)
a fine not to exceed $4,000; (2) confinement in jail for a term not to exceed
one year; or (3) both the fine and confinement. 
Id. at ' 12.21. 





[6]  Assault by
threat is punishable as a class C misdemeanor. 
Tex. Pen. Code Ann. ' 22.01(c) (Vernon 2003).  The maximum penalty for a class C misdemeanor
is a $500 fine.  Id. at ' 12.23.





[7]  Aggravated assault
against a public servant is punishable as a first degree felony.  Tex.
Pen. Code Ann. ' 22.02(b)(2). 
The penalty for a first degree felony is imprisonment for life or for a
term no longer than 99 years or less than five years; in addition to imprisonment,
the person may also receive a fine not to exceed $10,000.  Id. at ' 12.32(a) and (b).