PD-0526-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/26/2015 4:11:12 PM
Accepted 10/26/2015 4:19:43 PM
ABEL ACOSTA
CLERK

No. PD-0526-15

# IN THE COURT OF CRIMINAL APPEALS
## OF THE STATE OF TEXAS

THE STATE OF TEXAS,                                  Appellant

v.

VICTOR MANUEL SCHUNIOR JR.,                          Appellee

Appeal from Webb County

―――――――――――――

No. 04–14–00347–CR
In the Fourth Court of Appeals

No. 2013CRM000371 D1
In the 49th District Court of Webb County, Texas

―――――――――――――

\* \* \* \* \*

**STATE'S BRIEF ON THE MERITS**

\* \* \* \* \*

ISIDRO R. ALANIZ
DISTRICT ATTORNEY
49th Judicial District

By:
DAVID L. REUTHINGER, JR.
Assistant District Attorney,
Bar I.D. No. 24053936

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................ii

INDEX OF AUTHORITIES ..........................................................v

STATEMENT REGARDING ORAL ARGUMENT ................................1

STATEMENT OF THE CASE ...................................................2

STATEMENT OF PROCEDURAL HISTORY ........................................2

STATEMENT OF THE ISSUES PRESENTED..........................................3

ARGUMENT AND AUTHORITIES.........................................................4

  1) Is the limitations period for aggravated assault governed by Article 12.01(7) rather than Article 12.03(d) of the Code of Criminal Procedure? ........................................................................................5

    A. Plain-Language Analysis is Inconclusive and Inappropriate............5

      1. The Plain-Language Analysis Requires That Every Word in the Statutes Be Given Effect. ..................................................6

      2. The *Fantich* Court and the Court of Appeals Below Respectfully Erred By Not Attempting to Give Effect to Every Word of the Statutes.......................................................................9

      3. The Statutes Cannot Be Applied Literally Because This Would Give Rise to an Absurd Outcome....................................................13

      4. The *Fantich* Court and the Court of Appeals Below Respectfully Erred In Holding that the Statutes Were Unambiguous and Therefore Misapplied *Boykin*. ..........................................................15

    B. The *Colyandro/Marin* Presumption of Legislative Ratification Applies and Provides For a Three-Year Result ..................................19

1. The Legislature is Presumed to Consent to This Court's Interpretations of Penal Statutes When The Statute is Re-Enacted Without Pertinent Change. ...............................................19

2. The *Colyandro/Marin* Presumption Rule Applies to Statements Made by the Court in Dicta. ........................................................21

3. The Presumption Rule Supports the Three-Year Construction of the Statutes.....................................................................................25

4. The Appellee's Arguments are Foreclosed by the Presiding Judge's *Bennett* Concurrence, by *Garcia* and by the *Colyandro/Marin* Line of Authority.................................................27

C. Conclusion: The Limitations Period for Aggravated Assault Was and Remains Three Years ...................................................................29

2) If the limitations period for aggravated assault is governed by Article 12.03(d), does the lesser-included offense with the greater limitations period control when the lesser-included offenses of the aggravated assault include both misdemeanor assault and a felony? ........................30

A. Any Statutory Construction That Yields Absurd Results Must be Disregarded Regardless of the Methodology Used to Reach It...........31

B. A Two-Year Limitations Period for Aggravated Assaults That Include Felony Deadly Conduct As a Lesser-Included Offense is an Absurd Result the Legislature Could Not Have Intended ....................33

1. The Result Below Contradicts the Legislatively Intended Balance Between Societal And Individual Interest.........................................35

2. The Result Below Impedes Prosecution by Putting An Unjustifiable Burden on the State. ....................................................39

C. The Court of Appeals Respectfully Erred by Refusing to Consider the Effect of the Lesser-Included Offense ...........................................41

D. The Absurd Result Can Be Avoided By Construing Article 12.03(d)'s Term "Primary Crime" To Refer to the Lesser-Included Offense With the Greater Limitations Period .......................................43

E. Conclusion: If Article 12.03(d) Controls, Deadly Conduct Rather Than Aggravated Assault is the "Primary" Crime for the First Three Counts ........................................................................................46

PRAYER FOR RELIEF ................................................................48

CERTIFICATE OF COMPLIANCE...............................................49

CERTIFICATE OF SERVICE .......................................................49

iv

# INDEX OF AUTHORITIES

**Cases**

*Alejos v. State*,
555 S.W.2d 444 (Tex. Crim. App. 1977) ..............................................11, 14

*Arnold v. State*,
74 S.W.2d 997 (Tex. Crim. App. 1934) .....................................................22

*Bell v. State*,
693 S.W.2d 434 (Tex. Crim. App. 1985) ...................................................33

*Boykin v. State,*
818 S.W.2d 782 (Tex. Crim. App. 1991) .................4, 6, 8, 9, 15, 18, 31, 47

*Bryant v. State*,
391 S.W.3d 86 (Tex. Crim. App. 2012) ...............................................15, 18

*Burke v. State*,
28 S.W.3d 545 (Tex. Crim. App. 2000) .....................................................11

*Campbell v. State*,
49 S.W.3d 874 (Tex. Crim. App. 2001) .....................................................32

*Clinton v. State,*
354 S.W.3d 795 (Tex. Crim. App. 2011) .....................................................4

*Davis v. State*,
968 S.W.2d 368 (Tex. Crim. App. 1998) ...................................................12

*Ex parte Blume*,
618 S.W.2d 373 (Tex. Crim. App. 1981) .............................................24, 27

*Ex parte Hale*,
117 S.W.3d 866 (Tex. Crim. App. 2003) ...................................................32

*Ex parte Kuester*,
21 S.W.3d 264 (Tex. Crim. App. 2000) .....................................................32

*Ex parte Medellin*,
223 S.W.3d 315 (Tex. Crim. App. 2006) ...................................................8

*Ex parte Salas*,
724 S.W.2d 67 (Tex. Crim. App. 1987) ...............................................20, 25

*Fantich v. State,*
420 S.W.3d 287 (Tex. App.—Tyler 2013, no pet.).....................5, 6, 16, 18

*Garcia v. State*,
145 S.W.2d 180 (Tex. Crim. App. 1940) ..........................22, 23, 24, 27, 30

*Garcia v. State*,
829 S.W.2d 796 (Tex. Crim. App. 1992) (plurality opinion).......................8

*Grey v. State,*
 298 S.W.3d 644 (Tex. Crim. App. 2009) ...........................................39, 40

*Griffith v. State*,
116 S.W.3d 782 (Tex. Crim. App. 2003) ...............................31, 43, 46, 48

*Guzman v. State*,
188 S.W.3d 185 (Tex. Crim. App. 2006) .................................................38

*Hall v. State*,
225 S.W.3d 524 (Tex. Crim. App. 2007) .................................................42

*Henson v. State*,
No. 05-97-01894-CR, 2000 WL 1123509 (Tex. App.—Dallas 2000, pet.
   ref'd) (not designated for publication) ....................................................44

*Honeycutt v. State*,
82 S.W.3d 545 (Tex. App.—San Antonio 2002) .................................33, 38

*Hunter v. State*,
576 S.W.2d 395 (Tex. Crim. App. 1979) ...........................................25, 26

*Ibarra v. State,*
11 S.W.3d 189 (Tex. Crim. App. 1999) ...................................................35

*In re State ex rel. O'Connell*,
908 S.W.2d 902 (Tex. App.—Dallas 1998) .................................................11

*Irving v. State*,
176 S.W.3d 842 (Tex. Crim. App. 2005) ....................................................41

*Lafleur v. State*,
106 S.W.3d 91 (Tex. Crim. App. 2003) (Keller, P.J., concurring). ...........20

*Liverman v. State*,
PD-1595-14, 2015 WL 5579418, at *4 (Tex. Crim. App. Sept. 23, 2015)
    .................................................................................10, 12, 17, 18

*Mahaffey v. State*,
364 S.W.3d 908 (Tex. Crim. App. 2012) ...................................9, 13, 16, 18

*Marin v. State*,
891 S.W.2d 267 (Tex. Crim. App. 1994) ....................................................21

*Mead v. Property Owners' Ass'n of Terilingua Ranch, Inc.*,
410 S.W.3d 434 (Tex. App.—El Paso 2013) .............................................34

*Muniz v. State*,
851 S.W.2d 238 (Tex. Crim. App. 1993) ..........................31, 32, 33, 39, 41

*Shipp v. State*,
331 S.W.3d 433 (Tex. Crim. App. 2011) .....................................................9

*Sibley v. State*,
956 S.W.2d 832 (Tex .App.—Beaumont 1997) .........................................33

*Slott v. State*,
148 S.W.3d 624 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) ........35

*State v. Bennett*,
 415 S.W.3d 867 (Tex. Crim. App. 2013)  12, 16, 19, 25, 26, 34, 35, 37, 38,
    44, 45

*State v. Colyandro*,
233 S.W.3d 870 (Tex. Crim. App. 2007) ..........................20, 21, 25, 27, 28

*State v. Hardy*,
963 S.W.2d 516 (Tex. Crim. App. 1997) ...............................................8, 17

*State v. Medrano*,
67 S.W.3d 892 (Tex. Crim. App. 2002) .....................................................21

*State v. Neesley,*
239 S.W.3d 780 (Tex. Crim. App. 2007) ............................................12, 16

*State v. Oakley*,
 227 S.W.3d 58 (Tex. 2007).......................................................................14

*State v. Schunior*,
No. 04-14-00347-CR, ___ S.W.3d ___ (Tex. App.—San Antonio April 22,
   2015)...................................................2, 7, 10, 13, 15, 16, 22, 33, 41

*State v. Vasilas*,
253 S.W.3d 268 (Tex. Crim. App. 2008) ...................................................10

*State v. Weaver*,
945 S.W.2d 334 (Tex. App.—Houston [1st Dist.] 1997), *aff'd,* 982 S.W.2d
   892 (Tex. Crim. App. 1998) ..................................................................36

*Tita v. State*,
267 S.W.3d 33 (Tex.Crim. App. 2008) ...............................................42, 43

*Yandell v. State*,
46 S.W.3d 357 (Tex. App.—Austin 2001, pet. ref'd)................................43


**Statutes**
Acts 1997, 75th Leg., ch. 740, § 2, 1997 Tex. Sess. Law Serv. Ch. 740
   (H.B. 921) ..............................................................................................11

Tex. Code Crim. Proc. Ann. art. 1.03(4) (West 2011)............................40

Tex. Code Crim. Proc. ann. arts. 12.01, 12.02 (West 2011) .....................35

Tex. Penal Code § 22.05(b)(1)-(2),(e).....................................................33

TEX. PENAL CODE ANN. § 12.04(a) (West 2011)....................................32, 36

TEX. PENAL CODE ANN. § 22.01(a)(1) ........................................................5

TEX. PENAL CODE ANN. § 22.05(e) (West 2011)........................................34

Tex. Penal Code Ann. art. 31.09 (Vernon 1994)........................................36

**Treatises**
82 C.J.S. Statutes § 326 (1953)....................................................................33

53 Tex. Jur. 2d *Statutes* § 186 (1964).........................................................10

DIX & SCHMOLESKY, 40 TEX. PRAC., CRIMINAL PRACTICE AND PROCEDURE
  § 2:33 (3d ed.)...................................................................19, 21, 24, 29

No. PD-0526-15

IN THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

THE STATE OF TEXAS,                                              Appellant

v.

VICTOR MANUEL SCHUNIOR JR.,                          Appellee

Appeal from Webb County

* * * * *

**STATE'S BRIEF ON THE MERITS**

* * * * *

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through her District Attorney, ISIDRO R. ALANIZ, through his Assistant District Attorney, David L. Reuthinger, Jr., and respectfully presents to this Court her brief on the merits in the above named cause, pursuant to the rules of appellate procedure.

**STATEMENT REGARDING ORAL ARGUMENT**

Oral argument has been declined in this case.

## STATEMENT OF THE CASE

The Appellee, Victor Manuel Schunior, Jr. was indicted for four counts of aggravated assault. The offenses are alleged to have occurred on February 19, 2011. The indictment was returned on April 17, 2013, two years and two months after the shootings occurred. All but one of the counts allege that Appellee discharged a firearm at persons as they were exiting vehicles. Appellee moved for dismissal of all four counts, asserting that per Article 12.03(d), Code of Criminal Procedure, the limitations period for aggravated assault was two years and had run. The State responded that the limitations period was instead three years under per Article 12.01(7)'s catch-all provision for "all other felonies" not listed not listed in Article 12.01.

## STATEMENT OF PROCEDURAL HISTORY

Appellee's motion to dismiss was granted by the trial court on April 15, 2014 and the State appealed the dismissal order on April 30, 2014. On April 22, 2015, the court of appeals issued a published opinion affirming the dismissal order in its entirety. *State v. Schunior*, No. 04-14-00347-CR, ___ S.W.3d ___ (Tex. App.—San Antonio April 22, 2015) (hereinafter the "slip op.").

2

## STATEMENT OF THE ISSUES PRESENTED

**1) Is the limitations period for aggravated assault governed by Article 12.01(7) rather than Article 12.03(d) of the Code of Criminal Procedure?**

**2) If the limitations period for aggravated assault is governed by Article 12.03(d), does the lesser-included offense with the greater limitations period control when the lesser-included offenses of the aggravated assault include both misdemeanor assault and a felony?**

The State respectfully submits that the plain text of the statutes does not lead to a two-year conclusion, and that the statutes are ambiguous. As such, the long-standing rule of presumed legislative intent, combined with this Court's consistent dicta stating that the limitations period would be held to be three years under Article 12.01(7), together yield a three-year result because there is nothing expressly to the contrary in the legislative history. Moreover, even if the limitations period for aggravated assault is controlled by Article 12.03(d)'s two-year rule, the first three counts of this indictment would still have a three-year limitations period because, for each count, the three-year felony offense of deadly conduct is a lesser-included offense, and the Legislature could not have intended a two-year result for the greater offense of aggravated assault for these counts.

## ARGUMENT AND AUTHORITIES

Both issues here are fundamentally about the meaning of statutes. When interpreting the meaning of a statute, the courts seek to effectuate the collective intent of the legislators who enacted the legislation. *Clinton v. State,* 354 S.W.3d 795, 800 (Tex. Crim. App. 2011) (citing *Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)). To determine that collective intent, the Court first looks to the literal text, as it generally provides the best means to determine the fair, objective meaning of that text at the time of its enactment. *Clinton*, 354 S.W.3d at 800. The Court will therefore construe a statute according to its plain meaning, without considering extratextual factors, unless the statutory language is ambiguous or imposing the plain meaning would cause an absurd result. *Boykin,* 818 S.W.2d at 785.

The State's first issue asserts that Articles 12.03(d) and 12.01(7) are ambiguous as applied to the offense of aggravated assault, and that the limitations period is three years under Article 12.01(7) according to the collective intent of the Legislature, a conclusion which follows from the presumption of approval which arose when this Court issued repeated dicta so stating while the Legislature did nothing to 'correct' the Court. The

4

State's second issue asserts that even if the statutes are not ambiguous, or if the ambiguous-statute analysis goes in Appellee's favor, the result in the specific situation presented by the first three counts in this indictment is nevertheless absurd and therefore not an outcome that the Legislature could have intended.

**1) Is the limitations period for aggravated assault governed by Article 12.01(7) rather than Article 12.03(d) of the Code of Criminal Procedure?**

### A. PLAIN-LANGUAGE ANALYSIS IS INCONCLUSIVE AND INAPPROPRIATE

The opinion of the court of appeals below is premised on the reasoning of the Tyler Court of Appeals in *Fantich v. State,* 420 S.W.3d 287 (Tex. App.—Tyler 2013, no pet.). *Fantich* reasoned that Articles 12.01(7) and 12.03(d) *unambiguously* provided for a result of two years for all aggravated assaults other than those in which the aggravated-assault statute itself delineated the offense as a felony. *Id*. at 291 (citing TEX. PENAL CODE ANN. § 22.01(a)(1)). The Fourth Court followed suit in this case. Slip. op. at p. 14. Hence, the entirety of the reasoning of both courts is built on a presupposition that the statutes are *un*ambiguous.

The analysis required in the case of unambiguous penal statutes is totally different from the proper analysis for ambiguous statutes, and this Court has often insisted that these methods are mutually exclusive.

5

Extratextual sources, such as legislative history, may be a factor only if the statutory text is ambiguous or if its application would lead to an absurd result that the Legislature could not have intended. *Boykin*, 818 S.W.2d at 786. "This [bifurcated] method of statutory interpretation is of ancient origin and is, in fact, the only method that does not unnecessarily invade the lawmaking province of the Legislature." *Id.* The first question is whether the *Fantich* court, and perforce the court of appeals here, correctly decided that the statutes were unambiguous in their first breaths.

**1. The Plain-Language Analysis Requires That Every Word in the Statutes Be Given Effect.**

The *Fantich* court limited the "except" clause in Article 12.01 to those crimes specifically enumerated in that statute; it disregarded the 12.01(7) catch-all, and decided that, because "aggravated assault is not enumerated in article 12.01, we [will] apply the language in article 12.03(d) to determine the limitation period for the offense alleged in this case." *Fantich*, 420 S.W.3d at 290. *Fantich* cited only the statutes themselves to support the disregarding of the 12.01(7) catch-all. *Id.* Hence, there was no authority given to support *Fantich*'s conclusion that "Articles 12.01 and 12.03 of the code of criminal procedure are not ambiguous." *Id.*

6

Both the *Fantich* court and the court of appeals below basically stopped considering the meanings of the statutes when they thought they had a two-year plain-language construction that worked. They did not consider whether a three-year plain-language construction was possible, nor did they consider how to discern the conflict that would then arise, despite that conflict being readily apparent from the *Bennett* concurrences. At the root of the conflict is that Article 12.01(7) is a catch-all provision that states that felonies not otherwise explicitly provided for in that article, or in Article 12.03 of the same code, have a three-year limitations period, and aggravated assault is one such felony. Hence, the wrinkle is that Article 12.01 opens with an "except" clause that refers to Article 12.03:

*Art. 12.01*

**Except as provided in Article 12.03**, felony indictments may be presented within these limits, and not afterward:
....
(7) three years from the date of the commission of the offense: all other felonies.

The court below placed great importance on this "except" clause, reasoning that its presence was sufficient to ensure the triumph of Article 12.03(d). (Slip op. at p. 13). But that article contains *another* "except" clause that expressly limits its scope to those aggravated offenses for

7

which no other statute within the same chapter of the Code (i.e., Article 12.01) provides a limitations period:

*Art. 12.03*

(d) **Except as otherwise provided by this chapter,** any offense that bears the title "aggravated" shall carry the same limitation period as the primary crime.

The issue, therefore, is how to resolve the two "except" clauses. Both of these clauses must be given effect if this is reasonably possible. *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997). A court may not read exceptions, exemptions, or limitations into a statute that are not present in its text. *Garcia v. State*, 829 S.W.2d 796, 798-99 (Tex. Crim. App. 1992) (plurality opinion). Conversely, where a statute does provide an express exception, it *must* be applied: "established rules of statutory construction generally require that, where an express exception appears in a statute, the statute must apply in all cases not excepted." *Garcia*, 829 S.W.2d at 798-99. As such, so long as the reviewing court is taking it as a given that the statutes are unambiguous, then *both* of the "except" clauses should be given literal effect. *See id.*; *Boykin*, 818 S.W.2d at 786.

**2. The *Fantich* Court and the Court of Appeals Below Respectfully Erred By Not Attempting to Give Effect to Every Word of the Statutes.**

The gist of the problem is that there is no way to apply both of the "except" clauses to aggravated assault simultaneously. However, it is not a valid solution to disable portions of the statutes in an effort to declare them unambiguous so as to avoid following through with the alternative analysis for ambiguous or absurd statues. *See Boykin*, 818 S.W.2d at 786. To wit, both the *Fantich* court and the court of appeals below reached their solutions by giving Article 12.01(7) no effect as concerns aggravated assault, while also removing the the chapter reference in Article 12.03(d); Article 12.03(d) refers to what is "otherwise provided" in this chapter, which includes Article 12.01(7)'s catch-all. *Cf. Mahaffey v. State*, 364 S.W.3d 908, 913 (Tex. Crim. App. 2012).

The most important rule of plain-text statutory construction is to give effect to all of the words of a statute. *Shipp v. State*, 331 S.W.3d 433 (Tex. Crim. App. 2011). Hence, it is not a valid solution to *remove* clauses from a statute, and no canon of statutory construction so permits. *See id.* ("The rule of ejusdem generis … is best regarded as an aid to construction, however, and not an end unto itself; it should never be invoked to trump … the more important rule of construction that all words [in a statute] are to

be given effect."). Nor can the reviewing court *add* unwritten clauses to a statute in order to shoehorn a construction through. *Garcia*, 829 S.W.2d at 798-99. Nevertheless, the *Fantich* court and the court of appeals here did exactly that when they held that "that article 12.01(7)'s catch-all provision is subject to the more specific provisions of article 12.03(d)[,]" which the statutes nowhere so provide. Slip op. at p. 18.

For the same reason, the overlap cannot be resolved by the *in pari materia* (IPM) analysis cited by the court of appeals. The IPM analysis requires that the statutes cover the same subject matter—here, the limitations period for aggravated assault. *State v. Vasilas*, 253 S.W.3d 268, 272 (Tex. Crim. App. 2008) (citing 53 Tex. Jur. 2d *Statutes* § 186 (1964)). The whole issue is whether they so cover or not—again, the statutes' plain text does not expressly go one way or another. Therefore, IPM does not answer that question, because it is part of the next step of the analysis: how to resolve the overlap, *being first taken that there is an overlap to resolve.* And "even when statutes are construed to be *in pari materia,* 'any conflict between their provisions will be harmonized, if possible, and effect will be given to all the provisions of each act if they can be made to stand together and have concurrent efficacy.'" *Liverman v. State*, PD-1595-14, 2015 WL 5579418, at *4 (Tex. Crim. App. Sept. 23, 2015) (emphasis added). The

IPM rule is thus not a license to add or remove clauses from a statute in order to avoid consideration of extratextual sources.

The IPM rule also does not favor the more specific article—here, 12.03(d)—when the Legislature enacts a subsequent amendment which provides for the general act to control over the more specific one. *Alejos v. State*, 555 S.W.2d 444, 450 (Tex. Crim. App. 1977). In such case, the trophy goes to the general statute which wins the race by being the more recent legislative act. *Jones*, 396 S.W.3d at 561. After both Article 12.01(7) and Article 12.03 were enacted, the "except as otherwise provided" clause was added to Article 12.03(d) in 1997.[1] Therefore, Article 12.03(d)'s "[e]xcept as otherwise provided" clause, *not* the two-year provision itself, is the later enactment. *Burke v. State*, 28 S.W.3d 545, 546 (Tex. Crim. App. 2000).[2] This 1997 amendment added a very general exception to the previously-specific Article 12.03, the plain text of which would give priority to the application of any other statute in Chapter 12 over Article 12.03(d)'s two-year provision. If the reviewing court is looking to plain text alone, this provision should be given literal effect if

---

[1] Acts 1997, 75th Leg., ch. 740, § 2, 1997 Tex. Sess. Law Serv. Ch. 740 (H.B. 921).
[2] The rule is that the later *enactment, amendment, or legislative act* wins, not the later *statute*. *Burke*, 28 S.W.3d at 546; *In re State ex rel. O'Connell*, 908 S.W.2d 902, 908 (Tex. App.—Dallas 1998) (stating that what makes a statute the "later enactment" is whether it was *amended* later).

11

possible, despite its generality. *Cf. Davis v. State*, 968 S.W.2d 368, 372 (Tex. Crim. App. 1998) (stating that if Article 42.12 § 5(c)(1) and Article 37.07 § 3(a) conflicted, the plain language of art. 37.07, which was broader, controlled because its plain text demonstrated that the Legislature meant to expand admissible punishment evidence). The meaning of the 1997 amendment is likewise indiscernible from the plain text, necessitating recourse to extratextual aids. *See State v. Bennett*, 415 S.W.3d 867, 870-72 (Tex. Crim. App. 2013) (Keller, P.J., concurring).

In sum, the plain-text canons of construction cannot resolve the meaning of Article 12.03(d)'s "except" clause. The meaning of the 1997 amendment, which added that clause to Article 12.03(d), is pivotal; however, that meaning is not discernible without going beyond the plain text. That is done by following the *Boykin* analysis, not by inserting or removing statutory language as done by *Fantich* and the court of appeals. *See id.; cf. State v. Neesley*, 239 S.W.3d 780, 783 (Tex. Crim. App. 2007) (holding that plain language of statute limiting involuntary blood draws to a single sample controlled over State's objection that Legislature intended multiple draws, but consulting aids to determine definition of ambiguous word "sample" as usable sample); *Liverman* at *4 (similarly consulting civil case law to construe the word "execute.").

**3. The Statutes Cannot Be Applied Literally Because This Would Give Rise to an Absurd Outcome.**

The court of appeals noted that applying Article 12.01(7) literally—that "all other felonies" not listed in Article 12.01 have a three-year limitations period—would leave "article 12.03(d) completely meaningless." Slip op. at p. 13. The reasoning given by the court of appeals was that the "legislature is presumed to have intended both statutes to have effect and our interpretation is to be made in light of the statutory scheme as a whole." *Id.* (citing *Mahaffey*, 364 S.W.3d at 913). The court of appeals respectfully made no attempt to explain how giving Article 12.01(7)'s catch-all provision no effect would cause "both statutes to have effect."

Perhaps the court of appeals was appealing to the maxim that the courts will "not **presume** that the Legislature did a useless or vain thing by **enacting** language that was mere surplusage or that was not intended to be effective." *Ex parte Tucker*, 977 S.W.2d 713, 716-17 (Tex. App.—Fort Worth 1998, pet. dism'd) (citing *Childress v. State*, 784 S.W.2d 361, 364 (Tex.Crim.App.1990)) (emphasis added). But the issue is not whether the enactment in question—the *1997 amendment*—was "language that was mere surplusage or that was not intended to be effective." The Appellee is the one so arguing. The State's question was whether the 1997 amendment

13

was "intended to be effective"—and in particular, whether its effect was to give priority to Article 12.01(7) despite it being the general statute. *Cf. Alejos*, 555 S.W.2d at 450. The Legislature can enact new general provisions that are intended, and held, to control over previous specific provisions. *See, e.g.*, *Davis*, 968 S.W.2d at 372 (later-enacted general provision opening the door to all punishment evidence controlled over specific statute); *Crabtree*, 389 S.W.3d at 826 (new general provision concerning DPS controlled over arguable conflict with a more specific statute). And to categorically limit catch-all provisions such as "other commercial instrument" or "all other felonies" to exclude Wal-Mart receipts or aggravated assaults simply because there are some other felonies or instruments enumerated before the catch-all provision leads to a result which threatens the fundamental principle that all words in a criminal statute must be given effect. *Shipp*, 331 S.W.3d at 438-39.

What the court of appeals meant to say was that construing a statute so as to render Article 12.03(d) inapplicable to any situation is an absurd result which should be avoided if at all possible. In the civil world, statutory constructions can be rejected on the spot for that reason. *See, e.g.*, *State v. Oakley*, 227 S.W.3d 58, 63 (Tex. 2007). But in the *Boykin*-governed criminal world, the next step in that thought is to consult

14

extratextual aids in order to affirm or reject the construction. *Boykin*, 818 S.W.2d at 785-86. Instead, the court of appeals, like the *Fantich* court, held that the statutes were "unambiguous" and held "that article 12.01(7)'s catch-all provision is subject to the more specific provisions of article 12.03(d)" and therefore that Article 12.01(7) shall henceforth have no effect as to aggravated assault. (Slip op. at p. 43). The court of appeals also did not consider the absurd result that accrues under the particular facts of this case. *See* discussion *infra* Issue No. 2. For those two reasons, the court below respectfully misapplied the *Boykin* analysis by not consulting extratextual resources to resolve the absurd outcomes arising from its construction of the 1997 amendment.

**4. The *Fantich* Court and the Court of Appeals Below Respectfully Erred In Holding that the Statutes Were Unambiguous and Therefore Misapplied *Boykin*.**

The need to consult extratextual sources to discern the legislative intention of the 1997 amendment also suggests that the statutes are ambiguous. Ambiguity exists when a statute may be understood by reasonably well-informed persons in two or more different senses; conversely, a statute is unambiguous where it reasonably permits no more than one understanding. *Bryant v. State*, 391 S.W.3d 86, 92 (Tex. Crim. App. 2012); *Mahaffey v. State*, 364 S.W.3d 908, 913 (Tex. Crim. App.

15

2012) (citing *State v. Neesley,* 239 S.W.3d 780, 783 (Tex. Crim. App. 2007)). The last time these statutes were before this Court, the only thing that the Court could agree on was that the correct interpretation of the statutes was unsettled, the true limitations period was likewise unsettled, and that a defense attorney who did not file a motion to dismiss was, accordingly, not ineffective on account of that omission. *Bennett*, 415 S.W.3d at 867-68. It further follows from the Court's disagreement in *Bennett* that the statutes are understandable in two or more different senses, and hence, ambiguous. *See Mahaffey*, 364 S.W.3d at 913.

The *Fantich* court, and the court of appeals below, held that the statutes were *not* ambiguous; they favored Article 12.03(d)'s "except" clause over the other one in Article 12.01(7), thus forcing their conclusion. Slip op. at p. 13; *Fantich*, 420 S.W.3d at 292-93. Both courts reasoned that permitting Article 12.01(7)'s "except" clause to prevail over Article 12.03(d)'s competing clause would turn Article 12.03(d) into a complete nullity. So, instead of applying *Boykin* to effectuate and discern the intention of the "except" clauses, both courts essentially employed Brother Ockham's razor—that among many solutions, the simplest is the best—to lop off Article 12.01's "except" clause. In the *Liverman* case, this Court recently corrected the methodology of a court of appeals that also had erred

16

in oversimplifying the *Boykin* methodology. As with the *Fantich* court and the court below, the court of appeals in *Liverman* had discounted the possibility that the statutes at issue there were overlapping:

> The court of appeals accurately observed that [Penal Code] § 32.46(a)(1) contains the terms "sign" and "execute" while § 32.46(a)(2) contains the different terms "file" and "record," but we agree with the State that the use of different terms in these different subsections does not mean that the terms cannot overlap. And as the State explains, the legislature might have thought that the types of documents at issue in § 32.46(a)(2), being from fake or legally unrecognized courts, were—or at least might be—incapable of being executed. That does not mean that an act of "filing" or "recording" could not, in an appropriate case, also be an act of "executing."

*Liverman* at \*3. Because the statutes were potentially overlapping, the Court looked to extratextual sources—namely, a Texas Supreme Court opinion—to resolve the meaning of the term "execute." This was proper because the Court was seeking to give effect to "each word, phrase, clause, and sentence [in a statute] should be given effect if reasonably possible." *Hardy*, 963 S.W.2d at 52; *Liverman* at \*3.

On the other hand, the *Fantich* court respectfully erred because it did not attempt to discern the intent of the 12.01 "except" clause before determining that it was not reasonably possible to apply it to aggravated

17

assault.[3] The *Fantich* court's conclusion that rendering 12.01(7) inapplicable to aggravated assault "gives full effect to articles 12.01 and 12.03" was unsupported by the *Boykin* methodology. *See Fantich*, 420 S.W.3d at 293. As illustrated by *Liverman*, *Boykin* required the courts to attempt to give effect to *both* "except" clauses, and to resort to extratextual methods if the result was ambiguous. *Boykin*, 818 S.W.2d at 786; *Liverman* at *3. By not doing so, both the *Fantich* court and the court below arrived at an incorrect construction of the statutes. *See id.; Bryant*, 391 S.W.3d at 92; *Mahaffey*, 364 S.W.3d at 913. Rather, the correct course of action was to attempt to resolve the overlapping "except" clauses using the *Boykin* analysis for ambiguous statutes.

---

[3] The court's logic seemed to be: <u>if giving literal effect to both "except" clauses,</u> then one must prevail over the other. And if Article 12.01(7) is chosen, then we would have to Article 12.03(d) must be nullified; the Presiding Judge's concurrence had already pointed out the absurdity of such an approach. *Cf. Bennett*, 451 S.W.3d at 876 (Keller, P.J., concurring) (if 12.01(7) prevails, "Article 12.03(d) would have zero application."). Again, the court of appeals overlooked that the Presiding Judge was not necessarily using the "literal text" approach that is appropriate only for *unambiguous* statutes. *Boykin*, 818 S.W.2d at 785. And as demonstrated by the Presiding Judge's concurrence, the underlined thought is not a given because construing the literal text alone is but one way to interpret the statutes, and not necessarily one that is reasonable.

## B. THE *COLYANDRO/MARIN* PRESUMPTION OF LEGISLATIVE RATIFICATION APPLIES AND PROVIDES FOR A THREE-YEAR RESULT

The Presiding Judge's *Bennett* concurrence consulted legislative history to resolve the meaning of the 1997 amendment; while the concurrence could also have considered the extant judicial interpretations of the section, it declined to do so because "all of [the Court's] prior caselaw is *dicta,* [so] we are essentially operating on a clean slate." *Bennett*, 415 S.W.3d at 872 (Keller, P.J., concurring). However, the State respectfully submits that the Presiding Judge should have hesitated before concluding that the slate was clean. Rather, Article 12.01(7) should control aggravated assault because that result is presumed from the combination of this Court's seriata dicta so stating, and the Legislature's repeated reenactment of the statutes without pertinent change.

## 1. The Legislature is Presumed to Consent to This Court's Interpretations of Penal Statutes When The Statute is Re-Enacted Without Pertinent Change.

"A construction of a statute, made or suggested by the courts, has been treated as approved or affirmed by the legislature if, after the construction, the legislature met and failed to change the statute." DIX & SCHMOLESKY, 40 TEX. PRAC., CRIMINAL PRACTICE AND PROCEDURE § 2:33 (3d ed.). Therefore, when the Court is "faced with a challenge to a prior

19

judicial construction of a statute, [the Court has] long recognized that prolonged legislative silence or inaction following a judicial interpretation implies that the Legislature has approved of the interpretation.… In recognition of this, we have, on occasion, when reaffirming a prior judicial construction of a statute, stated that the prior interpretation was correct when, over the course of many years, it had not been legislatively overruled." *State v. Colyandro*, 233 S.W.3d 870, 877-78 (Tex. Crim. App. 2007). The strength of the presumption is stronger when the Legislature has also taken affirmative action such as amendment of the statute or reenactment without change of the pertinent provisions—as happened here, with the 1997 amendment. *See id.*; *Lafleur v. State*, 106 S.W.3d 91, 100 (Tex. Crim. App. 2003) (Keller, P.J., concurring).

The Appellee challenges the prior construction of the two articles here, whence the Court, albeit in dicta, had once said that the "statute of limitations for aggravated assault has long been three years." *Ex parte Salas*, 724 S.W.2d 67, 68 (Tex. Crim. App. 1987) (dicta). These articles have been re-enacted several times, including the particular reenactment in 1997 which added the "except" clause to Article 12.03(d), but without expressly addressing aggravated assault. Why did the Legislature remain silent about that offense? Perhaps it is because "where a statute has been

reenacted by the Legislature with knowledge of the judicial construction thereof[,] a court would not be justified in overruling such decision." *Colyandro*, 233 S.W.3d at 878; *State v. Medrano*, 67 S.W.3d 892, 896, 901 n.22 (Tex. Crim. App. 2002) (citing *Marin v. State*, 891 S.W.2d 267, 271-72 (Tex. Crim. App. 1994)). So, the question is simply whether the three-year dicta of the Court fall within the scope of this rule, despite being dicta. If so, then the reason for the silence is that the Legislature affirmed the Court's dicta, and had nothing further to add; then, with all due respect, the ruling below could "not be justified…." *Colyandro*, 233 S.W.3d at 878.

**2. The *Colyandro/Marin* Presumption Rule Applies to Statements Made by the Court in Dicta.**

As stated by Professors Dix and Schmolesky, the presumption rule applies to constructions that are either "made or **suggested**" by the courts. 40 TEX. PRAC., CRIMINAL PRACTICE AND PROCEDURE § 2:33 (emphasis added). The professors at least *suggest* that mere *suggestions*—dicta—can be sufficient to trigger the rule if the Legislature reenacts the statute construed by the dicta without pertinent contrary change. On the other hand, the court of appeals below seems to have reasoned that the

21

*Hunter/Salas* line did not trigger the presumption precisely because those opinions were dicta. Slip. op. at pp. 7, 12.

Contrary to the position of the courts below, the case law confirms that all that is required to trigger the presumption is a "strong intimation, sufficient to call the attention of the Legislature to the view which this court would take." *Garcia v. State*, 145 S.W.2d 180, 182 (Tex. Crim. App. 1940). The *Garcia* opinion applied a statutory construction based upon dictum originating from *Arnold v. State*, 74 S.W.2d 997, 999 (Tex. Crim. App. 1934). At issue in both *Garcia* and *Arnold* was the term "felony" in the three-strikes rule of that era, which provided that a third felony conviction carried an automatic life sentence. In *Garcia*, this Court had to determine whether a non-Texas felony *not also proscribed in Texas* would count as a "felony" strike. *Garcia*, 145 S.W.2d at 181. *Arnold*'s holding did not, and could not, extend to *out-of-state* felonies because Arnold was not accused of committing such. However, that did not stop the *Arnold* court from stating that the rule was limited to "offense[s] [which are also] denounced by the statutes of the state [i.e., Texas]." *Arnold*, 74 S.W.2d at 999. This statement is dicta because, again, Arnold was not accused of a "prior offense [ ] committed in a state other than" Texas.

But the defendant in *Garcia* was so accused: did his out-of-state offense count as a strike if it was not also considered a felony in Texas? Because this question was not raised in *Arnold*, but was answered only in dicta, the Court would have disregarded that dicta if the court of appeals below and the Appellant in this case are correct. But the Court did the opposite; in adopting *Arnold*'s dictum as its holding, the Court acknowledged that while *Arnold* had laid "down no rule on the subject, it [was] a strong intimation that" this Court would construe the applicable statute to exclude out-of-state felonies which were not also denounced by Texas law; the *Arnold* dicta was therefore sufficient to put the Legislature on notice that action would be required to forestall that construction. *Garcia*, 145 S.W.2d at 181. The Legislature having nevertheless remained silent, the Court adopted the *Arnold* dicta, held that Garcia's third strike did not count because there was no analogous Texas offense, and accordingly reversed and remanded Garcia's life sentence:

> "if the Legislature had intended to define a felony as including any offenses which the statutes of Texas do not include, it might have said so…. The Legislature has met many times since and has taken no action to change the law. Three regular sessions of the Legislature have been held since Judge Morrow wrote the opinion in the *Arnold* case. While he did not lay down a rule, he did give a strong intimation, sufficient to call the attention of the Legislature to the view which this court would take. In these three regular sessions the Legislature has not acted, and we can only construe their failure

23

to act as an indorsement of the construction of our statute which these cases give to it.

*Garcia*, 145 S.W.2d at 182. Arnold's dicta thus became, and remained, the law in Texas until the Legislature said otherwise—in the enactment of the current Penal Code. *Ex parte Blume*, 618 S.W.2d 373, 375 (Tex. Crim. App. 1981).

Indeed, *Arnold* was dicta, but what mattered was the strength of its intimation, not whether the intimation was part of the holding or not. Therefore, as suggested by the professors and held by *Garcia*, a strongly intimated statutory construction that is not part of the holding of an opinion may nevertheless be sufficient to trigger the presumption that the Legislature consented to the construction, so long as the Legislature has reenacted the statute without contrary change. *See id.*; *Garcia*, 145 S.W.2d at 182; 40 TEX. PRAC., CRIMINAL PRACTICE AND PROCEDURE § 2:33. *Garcia*'s holding makes sense, given the eminence of this Court; further, it seems unreasonable to think that the legislators would put the Court's statements through a colander to see which were holdings and which were dicta before drafting legislation.

**3. The Presumption Rule Supports the Three-Year Construction of the Statutes.**

Now consider the following dicta: the "statute of limitations for the offense of aggravated assault [is] a period of three years." *Hunter v. State*, 576 S.W.2d 395, 399 (Tex. Crim. App. 1979) (dicta). "The statute of limitations for aggravated assault has long been three years." *Ex parte Salas*, 724 S.W.2d at 68. These are intimations of similar or greater strength to the *Arnold/Garcia* dicta. And those opinions show that the fact that they are dicta is irrelevant to the question of whether the Legislature was on notice of the Court's intimations.

Hence, given that the Legislature has amended the statute since the pertinent dicta issued, "a court would not be justified in overruling" the three-year rule absent an unambiguous manifestation of legislative intent to change that interpretation in the amendment. *Colyandro*, 233 S.W.3d at 878. Presiding Judge Keller's *Bennett* concurrence thoroughly dissected that history. From the key events noted by the Presiding Judge, the following timeline arises:

- "The reshaping of Chapter 12 [of the Code of Criminal Procedure] and the enactment of the 1974 Penal Code occurred at the same time in the same legislation." *Bennett*, 415 S.W.3d at 873 (Keller, P.J., concurring). Hence, the first enactment of the relevant statutes took place just before *Hunter* was handed down in 1979. The Legislature thus learned soon after the enactment of the Code that the "statute of

limitations for the offense of aggravated assault [remained] a period of three years." *Hunter*, 576 S.W.2d at 399.

- "Most of the relevant statutory scheme was in place before 1997, but the '[e]xcept as otherwise provided' clause found in Article 12.03(d) was the result of a 1997 amendment." *Bennett,* 415 S.W.3d at 872 (Keller, P.J., concurring). Hence, there was a 1997 amendment, House Bill 921, which was enacted both well after *Hunter* and also ten years after the "long been three years" intimation in *Salas*.

- "The express purpose of [HB 921] adding the 'except' phrase to Article 12.03(d) was to give effect to the explicit ten-years-from-eighteenth-birthday limitation period for aggravated sexual assault of a child in Article 12.01." *Id*. at 875. In other words, the 1997 amendment *did not* directly bear on aggravated assault, one way or the other—despite the Court's intimations that the limitation period for aggravated assault was and remained three years.

The Presiding Judge's ultimate conclusion was that, *by not specifically dealing with aggravated assault in the 1997 amendment,* "the legislature [was] doing precisely the opposite" of what it needed to do to maintain the limitations period for aggravated assault at three years. *Id*. at 878.

But this conclusion respectfully follows only if the Legislature had a burden to say something about aggravated assault in the first place. The State submits that it did not: given the *Garcia* holding that the *Colyandro/Medrano/Marin* presumption applies to dicta, the Legislature had no such burden. Hence, the proper conclusion to be drawn from the 1997 amendment is that its silence on the subject of aggravated assault confirms the continuous approval of the *Salas/Hunter* construction, an

approval which has been valid since the enactment of the Penal Code itself, and which should remain valid until the Legislature acts to the contrary. *See Ex parte Blume*, 618 S.W.2d at 375.

**4. The Appellee's Arguments are Foreclosed by the Presiding Judge's *Bennett* Concurrence, by *Garcia* and by the *Colyandro/Marin* Line of Authority.**

The Appellee is asking the Court to scrap the "long recognized [rule] that prolonged legislative silence or inaction following a judicial interpretation implies that the Legislature has approved of the interpretation." *Colyandro*, 233 S.W.3d at 878. And he prays the Court to overrule *Garcia*'s tenet that even when an "opinion lays down no rule on the subject, [if] it is a strong intimation" of how a statute is to be constructed, and the Legislature opts not to change it, the Court should be trusted to have gotten it right. *Garcia*, 145 S.W.2d at 181. The Appellee has thus far made no actual argument against either rule, but that is what he must do if he wants to set aside *Hunter* and *Salas*.

The Appellee's response will necessarily rely on the construction and reasoning used by the court of appeals and the *Fantich* court, but it has already been demonstrated that both courts respectfully violated *Boykin*'s strict separation of construction methods for un/ambiguous statutes; further, the courts also respectfully failed to attempt to give effect to every

27

word in the statutes by not attempting to discern the meaning of the "except" clauses before declaring by fiat, rather than precedent, that the statues were unambiguous—over and against this Court's determination that the law was unsettled. *Cf. Bennett*, 415 S.W.3d at 869.

The Appellee will also re-invoke the Presiding Judge's *Bennett* concurrence and its analysis of the legislative history, perhaps to argue that *Salas* and *Hunter* were wrongly decided in the first place. Such an argument would ignore *Garcia*. The Court rejected a similar argument in *Colyandro*, where the State asked the Court to set aside its prior precedent construing section 1.03(b) of the Penal Code as limiting the felonies which could be predicates for a charge of criminal conspiracy to those felonies contained in the Penal Code itself, on the basis that the previous cases had been wrongly decided. *Colyandro*, 233 S.W.3d at 876. The State there argued that the Court had failed to "take into consideration the criminal conspiracy statute, Section 15.02, Penal Code, and the definition of 'felony' in Section 1.07(a)(23) of the Penal Code in [the precedent case construing the statute.]" While the Court did acknowledge that—like *Hunter* and *Salas*—the previous cases did not "invoke *Boykin's* rules for statutory construction[,]" and that there was some doubt about whether the Court had reached the correct result, that doubt was resolved by the

28

Legislature's ratification of the Court's precedent. *Id.* at 877-78. Hence, the *Colyandro/Marin* ratification doctrine trumps, or at least counsels against, such post-hoc attempts to argue that the Court misconstrued the statutes in the first place. *See* 40 TEX. PRAC., CRIMINAL PRACTICE AND PROCEDURE § 2:33 ("If [this] rule is taken seriously, judicial construction of a statute 'approved' by legislative inaction would seem logically to take the judicial construction beyond the courts' power to change. [But] the rule seems not to have been given this [more drastic] effect.")

## C. CONCLUSION: THE LIMITATIONS PERIOD FOR AGGRAVATED ASSAULT WAS AND REMAINS THREE YEARS

While the Presiding Judge's *Bennett* concurrence was correct that the 1997 amendment did not intend to deal with aggravated assault at all, it does not follow from the amendment's silence that this Court has been wrong for more than thirty years about the limitations period for aggravated assault. A better solution is to combine the Presiding Judge's reasoning, which appealed to legislative history, with the *Garcia* holding that the *Colyandro/Marin* line's rule of presumed legislative assent applies to dicta, and add to the mix the three-year dicta in *Hunter* and *Salas*. Then, the limitations period for aggravated assault is three years for a very sensible reason: this Court is worthy to be trusted when it construes

29

statutes, whether in holdings or dicta. *Garcia*, 145 S.W.2d at 181. To hold otherwise would be to undercut the function of the Court as the principal interpreter of penal statutes in this state, while also imposing on the Legislature an unprecedented duty to scrutinize the Court's words to ensure that they are not dicta before trusting that the Court has adequately carried out its function as such. That is a bridge too far.

**2) If the limitations period for aggravated assault is governed by Article 12.03(d), does the lesser-included offense with the greater limitations period control when the lesser-included offenses of the aggravated assault include both misdemeanor assault and a felony?**

Suppose that the bridge-too-far is crossed: then, Article 12.03(d) does control the limitation period for all aggravated assaults, as held by the *Fantich* court and the court of appeals below. Article 12.03(d) provides that the limitations period for aggravated assault will be the "same limitation period as the **primary crime**." TEX. CODE CRIM. PROC. ANN. art. 12.03(d) (West) (emphasis added). But when multiple offenses underlie the aggravated assault, which offense is the "primary crime" for purposes of that article, and why does it matter?

## A. ANY STATUTORY CONSTRUCTION THAT YIELDS ABSURD RESULTS MUST BE DISREGARDED REGARDLESS OF THE METHODOLOGY USED TO REACH IT

Whether a reviewing court is using the plain-meaning rules, a legislative history review, or any other method of statutory interpretation, the Prime Directive is the avoidance of an absurd result:

> We will not … give effect to a statute's plain meaning when such an interpretation produces absurd results. … The rationale underlying this exception to the "plain meaning" rule is our refusal to attribute to the Legislature a desire to reach absurd results. … If a statute may reasonably be interpreted in two different ways, a court may consider the consequences of differing interpretations in deciding which interpretation to adopt. … Moreover, if one reasonable interpretation of a statute yields absurd results and another interpretation yields no such absurdities, the latter interpretation should be preferred.

*Muniz v. State*, 851 S.W.2d 238, 244 (Tex. Crim. App. 1993). A statutory construction that yields an absurd result must be disregarded if another reasonable construction of the statute avoids the absurd outcome. *Griffith v. State*, 116 S.W.3d 782, 785 (Tex. Crim. App. 2003). Thus, even if a particular construction of the statutes is compelled by plain meaning, by the *in pari materia* rule, by a legislative history analysis, or by any other method, that construction must yield to another reasonable construction if the other construction avoids absurd outcomes. *Id*.; *Boykin*, 818 S.W.2d at 785; *Muniz*, 851 S.W.2d at 244.

An absurd result is simply one that the legislature could not have possibly intended. The Court will not construe a statute in such a way that thwarts the goal that the Legislature was trying to accomplish, even if that construction is compelled by the plain text of the statute. *Ex parte Kuester*, 21 S.W.3d 264, 267 (Tex. Crim. App. 2000), *overruled on other grounds by Ex parte Hale*, 117 S.W.3d 866 (Tex. Crim. App. 2003) (disapproving statutory construction where an "inmate would never be punished at all by the second sentence, as he would never even begin serving it.") If the legislature has expressed such a goal, the Court will not construe the statute in contravention thereof. *Campbell v. State*, 49 S.W.3d 874, 877 (Tex. Crim. App. 2001) ("A holding that the legislature intended to impose on a state jail felony offender, solely because of the prior *sequential* commission of the lesser offenses [rather than their seriousness] … produces an absurd result that the legislature could not possibly have intended.") (citing TEX. PENAL CODE ANN. § 12.04(a) (West 2011) (stating a goal that felonies "are [to be] classified according to the relative seriousness of the offense....")).

To avoid absurd results, the Court may consider the consequences of differing interpretations in deciding which interpretation to adopt, so long as those interpretations are reasonable. *Muniz*, 851 S.W.2d at 244 (citing

82 C.J.S. *Statutes* § 326 (1953)). If the consequences of the interpretation thwart the legislative goal, the interpretation must be disregarded. *See Muniz*, 851 S.W.2d at 244.

**B. A Two-Year Limitations Period for Aggravated Assaults That Include Felony Deadly Conduct As a Lesser-Included Offense is an Absurd Result the Legislature Could Not Have Intended**

In this case, Appellee Victor Manuel Schunior Jr. was charged with discharging a firearm in the direction of three individuals who were in vehicles, and with brandishing the same firearm at a fourth person, striking the victim. (Indictment, 1 CR 1). He could thus be charged with felony deadly conduct for the three shootings. TEX. PENAL CODE § 22.05(b)(1)-(2). It is well established that deadly conduct is a lesser-included offense of aggravated assault when the assault is committed by discharging a firearm at a person. Slip op. at p. 17 (citing *Honeycutt v. State*, 82 S.W.3d 545 (Tex. App.—San Antonio 2002)); *Sibley v. State*, 956 S.W.2d 832 (Tex .App.—Beaumont 1997); *see also Bell v. State*, 693 S.W.2d 434 (Tex. Crim. App. 1985) (referring to deadly conduct's previous name of "reckless conduct," before the adoption of the felony version of the offense).

Felony deadly conduct is a third degree felony. TEX. PENAL CODE ANN. § 22.05(e) (West 2011). There is no question that the limitations period for felony deadly conduct is three years under the catch-all provision of Article 12.01(7).[4] Given that limitations for aggravated assault is only two years under Article 12.03(d), a defendant commits an aggravated assault using a firearm, and the true bill is not handed down before year three begins, the Appellee gets a free reduction from a first- or second-degree aggravated assault to a third-degree deadly conduct charge.

Judge Johnson's *Bennett* concurrence sensed that a blanket two-year result for all aggravated 'non-felony' assaults will lead to absurd results— and that concern is vindicated here. *Bennett*, 415 S.W.3d at 878 (Johnson, J., concurring). And notwithstanding its two-year result, the Presiding Judge's concurrence thought that it "seems unlikely (to say the least) that the legislature would have intended the limitation period for robbery to be longer than that for aggravated robbery." *Bennett*, 415 S.W.3d at 876 (Keller, P.J., concurring). It seems equally unlikely that the Legislature intended for a lesser-included offense, being of a lesser degree,

---

[4] *Mead v. Property Owners' Ass'n of Terilingua Ranch, Inc.*, 410 S.W.3d 434, 436 n.1 (Tex. App.—El Paso 2013) (a malicious-prosecution suit in which the limitations period for the charged offense of felony deadly conduct was at issue).

to have longer limitations than the greater "aggravated" offense. This result is patently absurd for at least two reasons:

**1. The Result Below Contradicts the Legislatively Intended Balance Between Societal And Individual Interest.**

The purpose of a statute of limitations in the criminal context is to protect the accused from having to defend against stale criminal charges and to prevent punishment for acts committed in the remote past. *Slott v. State*, 148 S.W.3d 624, 629 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (citing *Ibarra v. State,* 11 S.W.3d 189, 193 (Tex. Crim. App. 1999)). The Legislature has generally sought to tie limitations to the severity of the crime, such that more severe offenses will carry longer limitations, reflecting a trade-off between the individual's liberty interest in not being brought up on old charges and stale evidence versus society's interest in being protected from offenders who commit more serious crimes. That is the unspoken reason why it "seems unlikely (to say the least) that the legislature would have intended the limitation period for [regular] robbery to be longer than that for aggravated robbery." *Bennett*, 415 S.W.3d at 876 (Keller, P.J., concurring).

Hence, misdemeanors have a shorter limitation period than felonies. TEX. CODE CRIM. PROC. ANN. arts. 12.01, 12.02 (West 2011). Among

35

felonies, there is a further classification for sentencing purposes that is based upon the severity of the crime. TEX. PENAL CODE ANN. § 12.04(a) (West 2011). A different classification is used for determining the limitations period for particular felonies, but it generally follows the same principle: murder, for example, has an infinite limitations period, while theft's limitations period varies between ten and five years depending on whether the victim is an estate, the government, or neither. *Compare id.* art. 12.01(1)(A) *with* art. 12.01(1)(A)-(B) *and* art. 12.01(4)(A).

Reflecting the two competing interests of recency and availability of evidence versus societal protection, some of the distinctions in Article 12.01 are based on the availability of evidence—by definition, murderers make unavailable the best eyewitness to the offense, so they deserve no limitations defense—but other distinctions are based solely upon the severity of the offense. Theft is a prime example: since the felony/misdemeanor status and degree vary depending on the amount stolen, so does limitations. And many small thefts can be aggregated to increase the "grade of the offense." *State v. Weaver*, 945 S.W.2d 334, 335 (Tex. App.—Houston [1st Dist.] 1997), *aff'd,* 982 S.W.2d 892 (Tex. Crim. App. 1998) (citing TEX. PENAL CODE ANN. § 31.09 (Vernon 1994)). This has the effect of extending limitations as well, for no other reason than the

fact that the defendant stole more stuff. *See id.* This reflects a legislative judgment that severity and limitations are two sides of the same coin; is "not the 'aggregation' of misdemeanor thefts into a single felony offense logically the same as the 'aggravation' of a misdemeanor assault into the felony offense?" *Bennett*, 415 S.W.3d at 884 (Cochran, J., concurring). And the further distinction within felony theft between estate/government theft and ordinary theft is also purely about severity, not about evidence going stale. If anything, it would be easier to catch a thief who steals from well-secured government offices or from an estate that is subject to both an administrator's watch and to judicial oversight and auditing, versus catching thieves in general. The Legislature has chosen to extend limitations for thieves who victimize governments and estates only because their offenses are more serious, in its judgment, than those of other thieves. Ditto for the first three counts in this indictment, for "the legislature did not intend that a serious, violent felony would have the same statute-of-limitations term as a misdemeanor that may involve merely causing physical contact that another person will regard as offensive or provocative." *Bennett*, 415 S.W.3d at 879 (Johnson, J., concurring).

The Appellee's first three counts are for a violent felony that involves the use of a gun, and which the Legislature has punished as *both*

37

aggravated assault and felony deadly conduct. The only real distinction between these two offenses is the severity of the mental state. Knowing or intentional aggravated assault is thus the more grave offense, and is one or two grades higher than the third-degree reckless deadly conduct offense, reflecting a legislative judgment that society deserves more protection from the Appellee if he committed the conduct with a more-than-reckless disregard for human life. But the elements otherwise overlap, and the evidence used to prove the two offenses is the same. *See Guzman v. State*, 188 S.W.3d 185, 194 (Tex. Crim. App. 2006); *Honeycutt*, 82 S.W.3d at 547.

Hence, the free drop-down that the court of appeals gave to the Appellee makes no sense in terms of the legislatively-crafted balance between individual freedom from stale allegations versus societal protection. It is merely a result of the title of the greater offense, and in the context of the first three counts, the drop-down is arbitrary and contradicts the relative severity of the two offenses. To paraphrase Judge Cochran: "I cannot think of any persuasive rationale for why the Legislature would declare that … aggravated assault [has a two year limitations period] …. simply because of the title…." *Bennett*, 415 S.W.3d at 884 (Cochran, J., concurring). As concerns the first three counts, there is no such rationale; it

is an absurd result the Legislature did not intend. *See Muniz*, 851 S.W.2d at 244.

**2. The Result Below Impedes Prosecution by Putting An Unjustifiable Burden on the State.**

Both this case and *Grey v. State,* 298 S.W.3d 644, 646 (Tex. Crim. App. 2009), concern the situation of the decisions a prosecutor seeking a conviction for aggravated assault must make during that process. In *Grey* (and the *Arevalo* case it overruled), the prosecutor's dilemma was whether to include an instruction on simple assault in the jury charge. The *Arevalo* rule was that the whole case could be reversed if a simple-assault or deadly-conduct instruction was given, and an appellate court later found there was insufficient evidence to prove the appellant was guilty only of that lesser offense. The State argued that the *Arevalo* rule's inherent risk to the State was unjustifiable, pointless and unwarranted; there was simply no reason to have it as a part of our jurisprudence. With that showing, the State had met the burden required to overcome stare decisis, and *Arevalo* was overruled. *Grey*, 298 S.W.3d at 650.

Here, the prosecutor's dilemma is whether the State can take an extra year to work the case before indicting it. This Appellee insisted, without authority, that there is "nothing absurd about the result that would

give aggravated assault the same statute of limitations of two years generally, since this is a sufficient period of time for the state to prepare a case for indictment." (Ape. COA Brief at p. 47, PDF p. 55). But the Appellee's rule would cause an *Arevalo*-type prosecutorial dilemma when one of the lesser-included offenses of the aggravated assault is also a felony: a race to the grand jury room.

This is exactly the kind of prosecutorial capitulation which this Court found to be an "obvious flaw" in *Grey*. It is unacceptable to force the State to drop a greater charge on such a technicality. *Grey*, 298 S.W.3d at 650 (stating that such a forced drop down to the lesser offense "would reflect not caution but capitulation."). Even if statutes of limitation are to be construed liberally in favor of the defendant, that indulgence does not require the "the prosecutor [to] be faced with a situation in which any decision he makes carries a high risk of error." *Grey*, 298 S.W.3d at 650. Since statutes of limitation reflect a balance in which graver offenses are recognized as a greater threat to society, there is no jurisprudential or policy reason to require the prosecutor to present a weaker case more quickly in order to charge a greater offense. *Cf*. TEX. CODE CRIM. PROC. ANN. art. 1.03(4) (West 2011) (on the contrary, the Legislature's objectives include "bring[ing] to the investigation of each offense on the trial all the

evidence tending to produce conviction or acquittal…."). The Appellee's argument contradicts express legislative intent, meaning that the result reached below is absurd. *See Muniz*, 851 S.W.2d at 244.

## C. THE COURT OF APPEALS RESPECTFULLY ERRED BY REFUSING TO CONSIDER THE EFFECT OF THE LESSER-INCLUDED OFFENSE

A court checking a statute for absurd results has a general license to consider the outcomes and consequences of statutory constructions. *Muniz*, 851 S.W.2d at 244. Despite this, the court of appeals rejected the State's second issue here by stating that the "determination of the limitations period for aggravated assault under article 12.03(d) cannot depend on potential lesser-included offenses whose submission in the jury charge might be warranted **by the facts developed through a trial."** Slip op. at pp. 17-18 (citing *Irving v. State*, 176 S.W.3d 842, 845 (Tex. Crim. App. 2005)) (emphasis added). The court of appeals thus reasoned that the lesser-included offense does not concretely exist until the evidence comes out supporting it.

However, the existence of lesser-included offenses is actually a *two-part* test in which the "facts developed through a trial" are but the second part. The first part of the test is "the pleadings approach[, which] is the sole test for determining in the first step whether a party may be entitled to a

lesser-included-offense instruction. The availability of a lesser-included instruction in a given case still would depend on the second step, whether there is some evidence adduced at trial to support such an instruction." *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007).

Because the facts supporting a lesser-included offense must be pled in the indictment, a defendant can know what lesser-included offenses may be raised at the time of the indictment. While the court of appeals thought the lesser-included offense analysis could not be performed until trial, it "may be, and to provide notice to the defendant must be, capable of being performed before trial by comparing the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser-included offense." *Id.* at 537-37.

It is well-established that the facts as pled in the indictment also control limitations. *Tita v. State*, 267 S.W.3d 33, 38 (Tex. Crim. App. 2008) (tolling facts must be pled in the indictment). There is no reason to treat the allegation of lesser-included deadly conduct differently from any other type of limitations-modifiying jurisdictional fact. *See id.* (mere "innuendo allegations" are sufficient grounds for tolling of limitations). The facts required to prove deadly conduct are the same as those proving aggravated assault, and the latter were pled here. (1 CR 1).

The indictment does not allege the lesser mental state of recklessness, but lesser-included mental states do not need to be pled in the indictment. *See Yandell v. State*, 46 S.W.3d 357, 362 (Tex. App.—Austin 2001, pet. ref'd) ("the allegation that appellant committed the dangerous act intentionally and knowingly also constituted an allegation that appellant knowingly discharged the firearm at the vehicle."). As such, this indictment *did* allege felony deadly conduct as to the first three counts, and the court of appeals should have considered the resulting impact upon limitations accordingly. *See Tita*, 267 S.W.3d at 38.

## D. THE ABSURD RESULT CAN BE AVOIDED BY CONSTRUING ARTICLE 12.03(D)'S TERM "PRIMARY CRIME" TO REFER TO THE LESSER-INCLUDED OFFENSE WITH THE GREATER LIMITATIONS PERIOD

If there was a reasonable way to resolve the conflict that avoids the absurd result in this case, the court of appeals should have adopted it. *Griffith*, 116 S.W.3d at 785. Here is one. Article 12.03(d) states that limitations for an "aggravated" offense is that of its "primary crime," but it does not define "primary crime." What was the 'primary' offense committed by this Appellee, who fired a gun at three people? When the only lesser-included offense in an aggravated assault is an assault, that is easy enough. But in a case in which there are multiple lesser-included

43

offenses, there is a question about what usage of the term "primary" was intended by the Legislature.[5]

Recourse to the dictionary to determine which use of the term was intended is therefore justified whether or not the statute as a whole is ambiguous—and even whether or not Articles 12.03(d) and 12.01(7) even overlap or conflict at all. *See Ramos v. State*, 303 S.W.3d 302, 307 (Tex. Crim. App. 2009). 'Primary,' as in 'primary crime,' could mean "most important[,] most basic or essential[, or] happening or coming first[.]" Primary, MERRIAM-WEBSTER COLLEGIATE DICTIONARY (11th ed.).[6]

Of these three definitions, "primary" as in "most basic or essential" simply begs the question of what is more essential to or basically representative of legislative intent—the use of a gun, or the assaultive

---

[5] "Primary crime" cannot simply refer to whatever offense matches the title of the instant offense minus the word "aggravated," not only because the statute nowhere so states, but also because there exists at least one "aggravated" offense with no such primary crime— aggravated promotion of prostitution. "Though titled 'aggravated' in conformity with the requirements of Article 12.03(d), the aggravated promotion of prostitution does not explicitly incorporate the crime of promotion of prostitution by its Penal Code section." *Bennett*, 415 S.W.3d at 873 n.42 (Keller, P.J., concurring). Thus, it is uncertain what "primary crime" means as to that offense. *Id*. Since there are zero primary crimes, that offense is not controlled by Article 12.03(d). *Henson v. State*, No. 05-97-01894-CR, 2000 WL 1123509, at *3 (Tex. App.—Dallas 2000, pet. ref'd) (not designated for publication).

[6] *Available at* http://www.merriam-webster.com/dictionary/primary (last accessed May 2, 2015).

nature of the offense? "Primary" as in "happening or coming first" also begs the question. Both deadly conduct and aggravated assault have been committed as soon as the Appellee pulls the trigger; the offenses are manifest at the same time. Hence, of these definitions of "primary," the word can only mean "most important" in the context of Chapter 12 of the Code of Criminal Procedure.

In that context, importance and severity are synonymous—and on that point, the *Bennett* concurrences are united. There, the Presiding Judge recognized that the Legislature designates offenses as "aggravated" precisely because of the severity of the offenses. Again, that is why the Presiding Judge thought it was quite unlikely that the "legislature would have intended the limitation period for robbery to be longer than that for aggravated robbery." *Bennett*, 415 S.W.3d at 876 (Keller, P.J., concurring). And between "merely causing physical contact that another person will regard as offensive or provocative" and felony deadly conduct, the most important underlying crime in a gunfire aggravated assault is rather obvious. *Bennett*, 415 S.W.3d at 878 (Johnson, J., concurring).

On the other hand, the Appellee's Brief below did not address the concerns of the Presiding Judge or of Judge Johnson. Instead, the Appellee misconstrued the State's argument as suggesting that *all* offenses can have their limitations period lengthened if there is a lesser-included offense that with a longer limitations period. (Ape. COA Brief at pp. 39-40, PDF pp. 47-48). As stated in the title of the ground for review, the argument posited here relates only to aggravated offenses subject to Article 12.03(d) which have lesser-included offenses that are both misdemeanors and felonies, or perhaps to a hypothetical situation in which the lesser offenses include competing felonies with different limitations periods. The State's position is that, in this narrow situation, the statutory scheme malfunctions and produces an absurd result. Fixing the resulting malfunction is well within the competence of the Court. *Griffith*, 116 S.W.3d at 785.

### E. CONCLUSION: IF ARTICLE 12.03(D) CONTROLS, DEADLY CONDUCT RATHER THAN AGGRAVATED ASSAULT IS THE "PRIMARY" CRIME FOR THE FIRST THREE COUNTS

The Presiding Judge, Judge Johnson, and Judge Cochran were all correct that the legislative intent is that graver offenses should have longer limitations. Therefore, the State's compromise—to view Appellee's lesser-included felony deadly conduct as the underlying offense for limitations purposes—presents a chance to unite the Court. Appellee's conduct in

Counts 1, 2, and 3 is certainly more serious than a simple assault, and it would be absurd and unprecedented for him to be unable to be prosecuted for the "greater" offense of aggravated assault yet still be liable for prosecution for the "lesser"-included offense of felony deadly conduct. Yet that was the result below.

To avoid absurdity, the three-year result must hold, and it can be reached without surplusage or ambiguity simply by holding that Article 12.03(d)'s general reference to the limitations period of whatever primary crime is at hand simply means any underlying offense, which in this case is both simple assault *and* felony deadly conduct; and that the resulting overlap is resolved using one of the ordinary definitions of "primary" to select the most important crime.

Therefore, if Article 12.03(d) controls, the outcome under the facts of this case is a three-year limitations period for the first three counts. This result effectuates the Legislature's intent as described by the *Bennett* concurrences, and accomplishes justice. That is the whole point of the statutory-construction analysis. *Boykin*, 818 S.W.2d at 785. Because this result is reasonable, gives effect to both articles, does not render any statutory language superfluous or void, and avoids the absurd result, the

court of appeals should have adopted it, and this Court should respectfully do so. *Griffith*, 116 S.W.3d at 785.

## **PRAYER FOR RELIEF**

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals will reverse the decision of the Court of Appeals.


Respectfully submitted,

ISIDRO R. ALANIZ
DISTRICT ATTORNEY
49TH JUDICIAL DISTRICT

BY:__/s/_____
David L. Reuthinger, Jr.
Assistant District Attorney for
THE STATE OF TEXAS
Webb and Zapata Counties,
49th Judicial District
1110 Victoria St., Suite 401
Laredo, Texas 78040
(956) 523-4900 / (956) 523-5070 (Fax)
Bar No.  24053936
**ATTORNEYS FOR APPELLANT**

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the total word count of this document, less exempt sections, is 10,383 and that the said document otherwise complies with the 2012 amendments to Rule 9.4, Texas Rules of Appellate Procedure.

___/s/_____
David L. Reuthinger, Jr.
Attorney for Appellee

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this the 23rd day of October, 2015, the following have been completed:

(1) The foregoing document has been electronically filed with the Clerk of the Court of Criminal Appeals in accordance with Tex. R. App. P. 68.3 as adopted by the Court of Criminal Appeals and hard copies will be filed accordingly.

(2) A legible copy of said document has been e-served to: Roberto Balli, Attorney for Appellee, at robertoballi@sbcglobal.net.

(3) A copy has been tendered to the State Prosecuting Attorney.

__/s/_____
David L. Reuthinger, Jr.
Attorney for Appellee